MARILYN GIANOCOSTAS & another,[1] administrators,[2] vs. RIU
HOTELS, S.A., & others.[3]

No. 01-P-1283.

Middlesex. February 11, 2003. - October 29, 2003.

Present: DUFFLY, DREBEN, & KANTROWITZ, JJ.

*Jurisdiction,* Forum non conveniens. *Negligence,* Wrongful death,
Misrepresentation.

In a civil action arising from the death of the plaintiffs' daughter resulting
from the alleged failure of medical personnel to recognize and treat her
diabetes-related symptoms that developed while she was vacationing in the
Dominican Republic, the judge, in dismissing the plaintiffs' complaint on
forum non conveniens grounds, properly concluded that the Dominican
Republic was an adequate alternative forum as to claims against the
defendant hotels, which were based on the alleged negligence of the medi-
cal providers at a clinic in the Dominican Republic, but this court was un-
able to conclude whether the Dominican Republic was an adequate alterna-
tive forum with respect to claims against the defendant tour operator,
which were premised on theories of allegedly negligent selection and
negligent misrepresentations [757-759]; moreover, while the judge properly
concluded that public and private factors combined to render the Dominican
Republic the more convenient forum as to the hotels, the judge did not
consider the location of witnesses with respect to the claims against the
tour operator, or give consideration to the interest of Massachusetts in
regulating the travel industry within its borders or to the question whether
Massachusetts or Dominican law was likely to govern the claims against
the tour operator [759-761]; therefore, this court remanded the case for
consideration of the specific claims against the tour operator and for a
determination whether, in light of that further consideration, the Dominican
Republic remained the most convenient forum for litigation of the claims
against all defendants or whether on balance the interests of justice would
be better served if the actions were severed [761-763].

CIVIL ACTION commenced in the Superior Court Department on
June 21, 2000.

[1] George Gianocostas.

[2] Of the estate of Jennifer Gianocostas.

[3] Riusa II, S.A.; Delta Holidays, Ltd.; Visantilla, A.I.E.; Macao Caribe
Beach, S.A.; and Interface Group-Massachusetts, LLC (doing business as
GWV International).

A motion to dismiss was heard by *Margaret R. Hinkle*, J.

*David C. Kravitz* (*Timothy P. O'Neill* with him) for the plaintiffs.

*Samuel M. Furgang* (*Sherry Y. Mulloy* with him) for Riu Hotels, S.A., & others.

*Rodney E. Gould* for Interface Group-Massachusetts, LLC.

DUFFLY, J. Following the death of their daughter resulting from the alleged failure of medical personnel to recognize and treat her diabetes-related symptoms that developed while she was vacationing in the Dominican Republic, the plaintiffs brought this wrongful death action in Superior Court[4] for negligence and negligent misrepresentation. On motions of all named defendants, a Superior Court judge dismissed the complaint on forum non conveniens grounds. The plaintiffs' appeal raises the question whether the judge acted within the scope of her discretion in concluding that the plaintiffs have an adequate remedy in the courts of the Dominican Republic. We apply to this question the "apparently universal rule, of deferring to the discretion of the motion judge." *W.R. Grace & Co. v. Hartford Acc. & Indem. Co.*, 407 Mass. 572, 584 (1990).

As to the defendants Riu Hotels, S.A., and its apparently related corporate entities[5] (collectively, Riu Hotels), we perceive no abuse of discretion. However, because the Superior Court judge's memorandum of decision reflects no consideration of

---

[4]The plaintiffs in their brief state that the original action in Superior Court against the Hotel Riu Mambo and its corporate parent, Riu Hotels, S.A., was removed to Federal District Court on the basis of diversity jurisdiction. The plaintiffs are residents of Massachusetts. The addition, following discovery, of the defendant GWV International, which has as its principal place of business Massachusetts, destroyed diversity jurisdiction. The plaintiffs voluntarily dismissed the Federal court action and refiled their complaint in Superior Court.

[5]The complaint refers to Riu Hotels, S.A.; Riusa II, S.A.; Delta Holidays, Ltd.; Visantilla, A.I.E.; and Macao Caribe Beach, S.A., collectively as the "Riu defendants," and alleges that all but Macao Caribe Beach, S.A., are foreign corporations with principal places of business in Spain. Macao Caribe Beach, S.A., is alleged to have its principal place of business in the Dominican Republic. (In their brief the plaintiffs assert that through discovery they learned that "Delta Holidays is located on the island of Jersey.") We assume — as, apparently, do the parties — that participation in the suit of Riu defendants not located in the Dominican Republic does not affect the forum non conveniens analysis.

the relevant factors as they relate to the defendant Interface Group-Massachusetts, LLC (doing business as GWV International, hereafter GWV), we are unable to determine whether the Dominican Republic offers an adequate remedy with respect to claims against GWV and, if so, whether (1) the action should proceed against both defendants jointly in Massachusetts or in the Dominican Republic, or (2) the action against GWV should be tried separately in Massachusetts and the action against Riu Hotels should proceed in the Dominican Republic.

1. *Background.* We summarize the relevant facts, drawing from the plaintiffs' complaint (for these purposes we take as true the facts alleged) and the affidavits and deposition transcripts accompanying the defendants' motions to dismiss and the plaintiffs' opposition thereto. *Green* v. *Manhattanville College*, 40 Mass. App. Ct. 76, 78 (1996).

Jennifer Gianocostas, the daughter of Marilyn and George Gianocostas, was, as of March of 1999, a twenty year old college student in Massachusetts. Jennifer required insulin to control her diabetes, but she was otherwise in good health. In February and March of 1999, Jennifer planned a trip to the Dominican Republic, using the services of Anthony Mavrakos, a local travel agent employed by AAA Travel in Saugus. Mavrakos gave Jennifer information about a vacation package in the Dominican Republic offered by GWV. Jennifer informed Mavrakos of her medical condition and that she would need access to a refrigerator to store her insulin. She also requested information about how to travel with needles and insulin as well as the availability of medical services at the advertised hotel, the Hotel Riu Mambo in Puerto Plata.[6] Mavrakos apparently satisfied her concerns and informed Jennifer that the Hotel Riu Mambo did offer medical services. Based on that information, Jennifer

---

[6]While not claiming that Mavrakos is an agent of GWV, the plaintiffs in their brief argue: "As GWV was Mavrakos' sole source of information for the Hotel, this information came to Jennifer from GWV through Mavrakos." In their opposition to the defendants' motions to dismiss, the plaintiffs similarly argued that "Mavrakos relied on GWV's informational resources" and "[used] the GWV information system . . . to answer Jennifer's questions about medical services at the Hotel." See note 8, *infra*. Mavrakos denied that Jennifer asked him about medical facilities, and he denied any specific memory of being told Jennifer was diabetic or being asked about the availability of a

purchased a seven-night vacation package that included accommodations at the Hotel Riu Mambo complex. Accompanied by two friends, Jennifer arrived at the Hotel Riu Mambo in Puerto Plata on March 13, 1999.

On the evening of March 15, during her stay at the Hotel Riu Mambo, Jennifer began to vomit repeatedly and to suffer from diarrhea. The hotel staff referred Jennifer to a clinic that provided services to guests of the hotel complex, the Doctor Correa International Touristic Medical Service & CIA (clinic). Janet Harris, a GWV representative who assisted travelers at the Hotel Riu Mambo complex, met with Jennifer on March 16. The following day, March 17, Jennifer sought treatment at the clinic, where she was placed on intravenous fluids.[7]

On March 19, Jennifer was transferred on an emergency basis to a private hospital in Puerto Plata. She lapsed into a severe diabetic ketoacidotic coma that day. Insulin treatment was not administered until March 20. On March 20, through arrangements made by her parents, National Air Ambulance transported Jennifer to Jackson Memorial Hospital in Miami, Florida, where she was admitted in critical condition. Jennifer died one month later as a result of complications from diabetic ketoacidosis.

2. *Discussion.* The principles guiding forum non conveniens inquiry are set forth in *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 508-509 (1947), and *Koster* v. *Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947). See *New Amsterdam Cas. Co.* v. *Estes,* 353 Mass. 90, 95 (1967); *Minnis* v. *Peebles,* 24 Mass. App. Ct. 467, 469 (1987). See also *Iragorri* v. *International Elevator, Inc.,* 203 F.3d 8, 12 (1st Cir. 2000). The inquiry involves a two-step analysis: whether an adequate alternative forum is available, and if it is, whether private and public interests strongly

---

refrigerator in the rooms for her insulin.

The motions before us concern only the forum non conveniens question, and we make no determination regarding the viability of any of the plaintiffs' substantive claims.

[7]In her affidavit, Harris states that she went to the clinic to see Jennifer and talk to the doctor. As she arrived at the clinic, she received a call on her cellular telephone from Jennifer's father. Mr. Gianocostas asked that Harris ask the doctor what was going on, which she did. Harris maintains that Mr. Gianocostas did not ask to speak directly to the doctor. Harris denies that the plaintiffs asked her about the competency of the clinic's doctors or that she offered that information.

favor litigating the claim in the other forum.

a. *Adequacy of alternative forum.* It is the defendants' burden to establish that there exists an adequate alternative forum within which to litigate the case. See *Mercier* v. *Sheraton Intl., Inc.,* 935 F.2d 419, 425 (1st Cir. 1991), appeal after remand, 981 F.2d 1345 (1992), cert. denied, 508 U.S. 912 (1993). "[D]ismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235, 254 n.22 (1981).

The plaintiffs, in their wrongful death action against Riu Hotels and GWV, have asserted specific claims of negligence against both Riu Hotels and GWV and negligent misrepresentation against GWV. In their motions to dismiss, the defendants argued that the case at its core "is a medical malpractice action" involving conduct occurring primarily in the Dominican Republic, based on the plaintiffs' allegations that the clinic and its medical staff were negligent in treating Jennifer and that the plaintiffs received assurances from Janet Harris on March 17 that Jennifer's condition was improving and that the clinic was providing appropriate care.

The bases for the plaintiffs' claims against Riu Hotels, however, are distinct from those against GWV. The negligence claim against GWV is premised on a theory of negligent selection (namely, that GWV was responsible for ensuring that hotel guests received competent medical care and that GWV's steps to ensure the competence of clinic medical staff providing care to hotel guests were inadequate). The negligent misrepresentation claim focuses primarily on the representations allegedly made by GWV[8] (a Massachusetts entity) to Jennifer (a Massachusetts resident) in Massachusetts. In addition, the plaintiffs allege that statements made by Harris (while in the Dominican Republic) to Jennifer's father (a Massachusetts resident who was apparently in Massachusetts at the time of the representa-

---

[8]As articulated by the plaintiffs, misrepresentations regarding the availability of appropriate medical care were alleged to have been made to Jennifer "through Anthony Mavrakos of AAA, [who informed her] that the 'all-inclusive' Hotel offered medical services," see note 6, *supra,* and in a "Tour Participation Agreement," in which GWV describes its responsibility "for arranging all services with airline, hotel and other independent suppliers to provide you with all services and accommodations in connection with your vacation."

tions) lulled them into believing that Jennifer was receiving appropriate medical attention and that without these misrepresentations, the plaintiffs would have flown sooner to their daughter's aid.

We agree with the motion judge that the fact that the proceedings and remedies available in the foreign jurisdiction differ from, or are possibly less favorable than, those in the Commonwealth does not render the alternative system inadequate. See, e.g., *Alcoa Steamship Co.* v. *M/V Nordic Regent,* 654 F.2d 147, 159 (2d Cir.), cert. denied, 449 U.S. 890 (1980); *LTX Corp.* v. *Daewoo Corp.,* 979 F. Supp. 51, 59 n.7 (D. Mass. 1997), aff'd, 141 F.3d 1149 (1st Cir. 1998). See also *Minnis* v. *Peebles,* 24 Mass. App. Ct. at 470 ("we do not factor into the balance the possibility that the plaintiffs' claims may have less monetary value in [the foreign jurisdiction]"). As to the claims against Riu Hotels, which are based upon the alleged negligence of the medical providers at the clinic in the Dominican Republic, the judge supportably concluded that the Dominican Republic is an adequate alternative forum.

However, the Superior Court judge's memorandum does not specifically address whether the plaintiffs' claims against GWV for negligent misrepresentation, which has elements distinct from those of negligence,[9] and for negligent selection are recognized as bases for recovery in the Dominican Republic. Relying on affidavits of two attorneys admitted to practice in the Dominican Republic, the motion judge concluded that the Dominican Republic "permits litigation of the subject matter in

---

[9]The elements of negligent misrepresentation are set out in the Restatement (Second) of Torts § 311 (1965):

"(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

"(a) to the other, or

"(b) to such third persons as the actor should expect to be put in peril by the action taken.

"(2) Such negligence may consist of failure to exercise reasonable care

"(a) in ascertaining the accuracy of the information,

"or

"(b) in the manner in which it is communicated."

dispute."[10] In making this determination, the judge failed to focus on the nature of the claims and the precise issues likely to be actually tried as against GWV. Cf. *Iragorri* v. *United Technologies Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) ("Rather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried . . . . In a suit alleging negligence, for example, the court might reach different results depending on whether the alleged negligence lay in the conduct of actors at the scene of the accident, or in the design or manufacture of equipment at a plant distant from the scene of the accident").

We are unable to conclude, on this record, whether the Dominican Republic is an adequate forum with respect to claims against GWV. See *Mercier* v. *Sheraton Intl., Inc.*, 935 F.2d at 425-427 (court vacated dismissal order and remanded for further findings where moving party's affidavit did not positively aver that Turkish law recognized claims alleging breach of contract and tortious interference with contract).

b. *Private and public interests.* The presumption in favor of a plaintiff's choice of forum "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co.* v. *Reyno*, 454 U.S. at 255. See *New Amsterdam Cas. Co.* v. *Estes*, 353 Mass. at 95. Pointing to factors such as ease of access to sources of proof and availability of compulsory process for attendance of unwilling witnesses, the defendants in their motions to dismiss claim that the Dominican Republic is the most convenient forum.

---

[10]Attorney Praxedes J. Castillo Baez avers in his affidavit that "[m]edical malpractice claims are brought and litigated in the Dominican courts," and that based on his "professional training and experience, there is no question that Articles 1382 through 1384 of the Dominican Civil Code which set forth the legal foundation for claims to redress tortious conduct are applicable to damage claims for medical malpractice. It is not necessary that there be a Code provision which specifically addresses medical malpractice claims in order to bring and adjudicate a claim for damages for medical negligence." Attorney Juan Carlos de Moya Chico states in his affidavit that under the relevant laws of the Dominican Republic "a person suffering damage resulting from the act, negligence or imprudence of another may seek compensation . . . . In the case of a death of a person, the parents . . . have a legally recognized right to sue for damages . . . [including] moral damages and material damages."

These factors, on which the motion judge also relied, all pertain primarily to claims against Riu Hotels for negligence based upon the alleged malpractice of medical providers of the clinic associated with the hotel.[11]

In weighing the public and private interests favoring litigation of the plaintiffs' claims against GWV in the Dominican Republic, the judge noted only that "[Janet] Harris'[s] alleged misrepresentations occurred in that country." The judge did not consider the location of witnesses with respect to these specific claims.[12] *Iragorri* v. *United Technologies Corp.*, 274 F.3d at 74 (judge must "focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the

[11]The plaintiffs claim that a critical factor — access to sources of proof pertaining to the malpractice issue — was wrongly decided. We reject the plaintiffs' argument that liability for medical malpractice has been established by the documentary evidence, thus negating the need for live testimony, and that testimony from medical personnel is not needed because "Jennifer's medical records, as analyzed and interpreted by expert witnesses (who are free to use interviews with the doctors who treated Jennifer as part of their testimony), are likely to provide much more accurate information regarding Jennifer's treatment than would the now-hazy recollection of medical personnel regarding events that took place years ago." Cf. *Green* v. *Manhattanville College*, 40 Mass. App. Ct. at 80. We agree with the motion judge's implicit determination that an action premised largely on negligence in the provision of medical treatment in the Dominican Republic cannot be fairly tried without the live testimony of the medical personnel said to have been involved in providing (or failing to provide) that treatment. See, e.g., *Sigalas* v. *Lido Maritime, Inc.*, 776 F.2d 1512, 1519-1520 (11th Cir. 1985) (in wrongful death action, that Greek doctor charged with malpractice was not subject to United States process was factor supporting dismissal); *Meaamaile* v. *American Samoa*, 550 F. Supp. 1227, 1232 n.9 (D. Haw. 1982) (medical malpractice alleged to have occurred in Pago Pago, leading "to a situation in which access to the most important sources of proof can most easily be had in American Samoa"); *Jeha* v. *Arabian Am. Oil Co.*, 751 F. Supp. 122, 125 (S.D. Tex. 1990), aff'd, 936 F.2d 569 (5th Cir. 1991) (medical malpractice claim filed in Texas dismissed where plaintiff "received all of the medical treatment from Aramaco doctors in Saudi Arabia. . . . To require these doctors to travel to Texas or to require the lawyers to go to them in Lebanon would be wasteful"); *In Re Rezulin Prod. Liability Litigation*, 214 F. Supp. 2d 396, 399 (S.D. N.Y. 2002).

[12]At the time of the hearing on the motion, Harris was located in Massachusetts. We recognize that there may also be witnesses in the Dominican Republic whose testimony will be required to defend against claims of falsity. Consideration of the location of all witnesses is relevant in determining whether such private interests clearly overcome the plaintiffs' choice of forum.

parties and the availability of witnesses and the evidence needed for the trial of these issues"). Nor did the judge give consideration to the interest of Massachusetts in regulating the travel industry conducting business within its borders or to the question whether Massachusetts or Dominican law is likely to govern the claims against GWV.[13] If Massachusetts law governs, then as to GWV, this factor would weigh heavily in favor of Massachusetts as the distinctly preferable forum. *W.R. Grace & Co.* v. *Hartford Acc. & Indem. Co.*, 407 Mass. at 586.

3. *Conclusion.* Although the motion judge's memorandum amply supports her conclusion that, as to claims against the Riu Hotels, the Dominican Republic provides an adequate forum and that private and public factors combine to render the Dominican forum the more convenient as to Riu Hotels, we must remand the case for consideration of the specific claims against GWV and for a determination whether, in light of that further consideration, the Dominican Republic remains the most convenient forum for litigation of the claims against all defendants or whether on balance the interests of justice would be better served if the actions were severed. See, e.g., *Iragorri* v. *United Technologies Corp.*, 274 F.3d at 70 (noting without discussion that claims against one defendant were transferred to another district, where case against that defendant was dismissed on forum non conveniens grounds). Cf. *Ciba-Geigy Ltd.* v. *Fish Peddler, Inc.*, 691 So. 2d 1111, 1116-1117 (Fla. Dist. Ct. App. 1997).[14]

A further aspect of the judge's ruling requires clarification.

---

[13]In this connection, see, e.g, *Dasha* v. *Adelman*, 45 Mass. App. Ct. 418, 426-427 (1998).

[14]The *Fish Peddler* case involved multiple parties and was commenced in Florida. Fourth-party defendants (several chemical corporations located in countries in Europe, in the United States, and in the Bahamas) brought a motion to dismiss on forum non conveniens grounds only against certain of the plaintiffs (Ecuadorian shrimp farmers, some with parent corporations in the United States). The trial judge denied the motion to dismiss. The Florida District Court of Appeals reversed, concluding that the trial court had abused its discretion in finding that Ecuador was not an adequate alternative forum. Among other things, the court determined that the shrimp farmers' case against the chemical corporations was "easily severable" from the breach of contract action in Florida and was not necessary to the third-party defendant's (Lango-Taura) defense (negligence of third persons as an excuse for nonperformance) in the breach of contract case against Lango-Taura. Lango-

The defendants filed written notices of waiver of any defense based on a statute of limitations or on a claim of lack of personal jurisdiction, which might otherwise be available to them in an action by the plaintiffs in the Dominican courts. The defendants also agreed to waive any requirement that the plaintiffs post a bond. The defendants claim that the waivers effectively permit the plaintiffs to commence a single action against all of the same defendants in a Dominican court. The motion judge did not expressly condition her dismissal order on the moving defendants' notices of waiver. Arguably, the order incorporates such waivers; however, since the Dominican courts could conceivably reject the waivers, we think the wiser course is to make this an explicit condition in the event of a grant of dismissal. See *Mercier* v. *Sheraton Intl., Inc.*, 935 F. 2d at 426 (Federal District Court "should have granted a dismissal conditioned on the Turkish courts' actually taking cognizance of a substitute action"). See also *Pain* v. *United Technologies Corp.*, 637 F.2d 775, 780, 785 (D.C. Cir. 1980), cert. denied, 454 U.S. 1128 (1981) (orders granting motions to dismiss on grounds of forum non conveniens were conditioned on stipulations consenting to personal jurisdiction in foreign court, agreeing to waive any defense of statute of limitations were such suit to be brought within one year of date of dismissal, and agreeing "to proceed directly to trial only on the issue of damages, without contesting liability, in any suit filed by plaintiffs outside the United States"; the order "expressly provid[ed] that the suits could be reopened in the United States without prejudice should any of the stipulated conditions fail to materialize").

The judgment is reversed. The matter is remanded to the Superior Court for further consideration of whether the Dominican Republic offers an adequate remedy with respect to the plaintiffs' claims against GWV and, if so, whether the action should proceed against the defendants jointly in Massachusetts or the Dominican Republic, or whether the action against GWV should be tried separately in Massachusetts and the action against Riu Hotels should proceed in the Dominican

Taura's defense could be maintained without addressing the merits of the third- and fourth-party causes of action. *Ciba-Geigy Ltd.* v. *Fish Peddler, Inc.*, 691 So. 2d at 1116-1117.

Republic. Any judgment of dismissal on the ground of forum non conveniens shall be conditioned upon the defendants' affirmatively waiving, in any action filed in the Dominican Republic, any defense based on statutes of limitation or lack of personal jurisdiction, and any requirement that the plaintiffs post a bond; moreover, any judgment of dismissal shall be conditioned upon the courts of the Dominican Republic giving full force and effect to such waivers.

*So ordered.*