Hinkle, J.
The plaintiffs filed this negligence action against the defendants following the death of their daughter Jennifer due to allegedly deficient medical treatment received while she was vacationing in the Dominican Republic. All defendants moved to dismiss the action on the ground of forum non conveniens. In a Memorandum of Decision and Order dated June 27, 2001, this Court allowed that motion [13 Mass. L. Rptr. 444]. In Gianocostas v. RIU Hotels, S.A., 59 Mass.App.Ct. 753 (2003), the Appeals Court affirmed the dismissal as to all defendants except Interface Group - Massachusetts, LLC dba GWV International (“GWV”) and remanded the case to this Court:
for further consideration of whether the Dominican Republic offers an adequate remedy with respect to the plaintiffs’ claims against GWV and, if so, whether the action should proceed against the defendants jointly in Massachusetts or the Dominican Republic, or whether the action against GWV should be tried separately in Massachusetts and the action against Riu Hotels should proceed in the Dominican Republic.
Id. at 762.

BACKGROUND

The following facts are taken from the complaint, depositions and affidavits filed by the parties in connection with defendants’ motion to dismiss. In February of 1999, Jennifer Gianocostas, the plaintiffs’ only child, was a well-controlled, insulin-dependent diabetic when she began considering a vacation with friends for her college spring break. In February, Jennifer and her friend Jacqueline Dondero (“Dondero”) visited the American Automobile Association of Southern New England (“AAA”) in Saugus, Massachusetts and discussed possible vacation destinations with an AAA travel agent, Anthony Mavrakos (“Mavrakos”). Jennifer spoke to Mavrakos on several occasions regarding her vacation plans. If there were any specific questions about different hotel properties, Mavrakos would have sought the answers from GWV and relayed the information to Jennifer. According to Dondero, Jennifer informed Mavrakos that she was a diabetic and would need a hotel room with a refrigerator for her insulin and a hotel offering medical services. Mavrakos denies any conversation with Jennifer concerning medical issues.
After examining brochures in the AAA office and having discussions with Mavrakos, Jennifer and her friends Dondero and Cheiyl Darrigo (“Darrigo”) selected a GWV vacation package to Puerto Plata in the Dominican Republic. GWV is a Massachusetts-based tour operator which sells package tours consisting of air transportation, hotel accommodations and ground transfers. GWV does not own or operate any of the hotels or other services offered through its packages. Jennifer’s vacation package consisted of seven nights at the Hotel Riu Mambo in Puerto Plata from March 13 through March 20, 1999.
The Hotel Riu Mambo in Puerto Plata (“the Hotel”) is part of a chain of Riu Hotels that bear the “Riu” trade name. Riusa II, S.A., the marketing and promotional arm of the foreign defendants, began a relationship with GWV in June of 1998. The goal of the relationship was to sell vacation packages promoting hotel accommodations in various Riu Hotel destinations. GWV paid to reserve blocks of rooms in several hotels, *43 including the Hotel. The foreign defendants created a color advertisement with a description of the Hotel which was placed in GWV’s Sunsations Catalogue. Mavrakos had the Sunsations Catalogue.
Jennifer, Dondero and Darrigo arrived at the Hotel in Puerto Plata on March 13, 1999. Janet Harris (“Harris”), a GWV destination representative, provided them with an orientation to Puerto Plata and told them she was available to assist them if necessary. Harris gave them her telephone number. Harris had worked for GWV as a destination representative in the Dominican Republic for five years. Her job responsibilities included meeting tour participants at the airport, accompanying them to their buses for transfer to the hotel, conducting weekly orientation meetings, making herself available to tour participants by answering questions by telephone and during certain hours at many of the hotels, and acting as a liaison with service providers.
On Monday, March 15, 1999, Jennifer became ill and vomited periodically through the night. Dondero called the front desk of the Hotel jfor assistance. A hotel representative put her in touch with the Doctor Correa International Touristic Medical Service and CIA (“the Clinic”), which had a contractual relationship with the Hotel to provide medical services to its guests. Dondero described Jennifer’s medical condition to the doctor and said that Jennifer was a diabetic. The doctor did not appear to understand the words “diabetic” or “diabetes.” The doctor told Dondero that Jennifer would be fine and that the pharmacy would re-open in the morning. The next day, Jennifer contacted Harris, who recommended that she stay hydrated. Harris did not know at that point that Jennifer suffered from diabetes.
On Wednesday morning, March 17, 1999, Jennifer still felt ill and went to the Clinic, where she stayed overnight. The doctor at the Clinic assured Dondero and Darrigo that Jennifer would be fine. Mrs. Gianocostas spoke to Harris by telephone that day, explained that Jennifer was a diabetic and expressed concern that the clinic doctor did not appear to understand the word “diabetes.” Mrs. Gianocostas told Harris that she would bring Jennifer home if she could not receive proper medical care in the Dominican Republic. Harris told Mrs. Gianocostas that Jennifer’s condition was improving. Mr. Giancostas also spoke to Harris several times that day, and Harris assured him that Jennifer had a common stomach ailment and was in good hands at the Clinic. Harris stated that the care was excellent and said that she was from Portsmouth, New Hampshire. Mr. Gianocostas understood this to mean that he and Harris had a common understanding of what she meant by excellent medical care. According to Harris, however, she never made any statements to the Gianocostases concerning the competence of the Clinic doctors.
Jennifer was discharged from the Clinic on Thursday, March 18, but her vomiting and weakness persisted throughout the day. When Dondero called the Clinic and spoke to the doctor on duty, he informed her that he had consulted with the doctor who had previously treated Jennifer, and they agreed that her condition was caused by “nervousness.” Later that evening, Jennifer telephoned the Clinic and asked that the doctor come to see her. The doctor examined Jennifer and diagnosed her with gastroenteritis. At approximately 11:00 p.m., the doctor brought Jennifer back to the Clinic.
In the early morning on Friday, March 19, 1999, the doctor telephoned Dondero and Darrigo and asked them to bring Jennifer’s glucose tester to the Clinic. When they arrived at the Clinic, Jennifer was hallucinating and unable to operate her glucose tester. After Jennifer’s eyes rolled back into her head, she was transported via ambulance to the Grupo Medico Dr. Bournigal, S.A. (“the Bournigal Hospital”) in Puerto Plata. After being contacted by the Gianocostases, Harris visited Jennifer at the Bournigal Hospital on Friday. Mrs. Gianocostas informed Harris that she intended to fly to the Dominican Republic immediately. Harris stated that this was unnecessary because the medical care at the hospital was fine. According to Harris, she may have told the Gianocostases that in her experience the doctors at the Bournigal Hospital were good, that some of the doctors there had been trained in the United States, that she had received good care there after suffering an asthma attack, and that one or two past tour participants had stated that they received satisfactory care there. Mrs. Gianocostas left Boston that day for the Dominican Republic, and Mr. Gianocostas began arranging for Jennifer’s emergency transportation to Miami.
Mrs. Gianocostas arrived in the Dominican Republic at 8:00 p.m. on March 19. Harris picked her up at the airport and brought her to the Bournigal Hospital. According to Mrs. Gianocostas, the hospital was filthy and the medical equipment antiquated. Hospital personnel were unresponsive to her inquiries about Jennifer. Jennifer’s doctors spoke sufficient English that Mrs. Gianocostas could communicate with them. Jennifer was transported to a hospital in Miami where she died one month later as a result of an acute diabetic ketoacidotic coma.
The plaintiffs filed this action on June 21, 2000, alleging negligence and wrongful death against the Riu defendants in Counts I and II. Count III of the complaint alleges negligence against GWV, Count IV alleges negligent misrepresentation against GWV, and Count V alleges wrongful death against GWV.

Attorney Affidavits

Various attorneys submitted affidavits in connection with the pending motion. Attorney Diogenes Herasme (“Herasme”) has been licensed to practice law in the Dominican Republic since 1991, has a master’s degree in Dominican Civil Tort and Civil Procedures, and teaches at the Carribean University and the Catholic University of Santo Domingo. According to *44 Herasme, claims for negligent misrepresentation and negligent selection could be brought under Article 1383 of the Dominican Civil Code (“the Code”), which provides that “everyone is responsible for the harm he has caused, not only by an action, but also due to his negligence or imprudence.” Article 1384 of the Code states that masters and principals are liable for damages caused by their servants or agents during their employment. Herasme says that negligent misrepresentation claims are commonly heard in the Dominican Republic and that a plaintiff, to prevail on such a claim, must establish a false statement, reliance by the plaintiff, and injury. According to Herasme, a company could be found responsible for the misrepresentations of its employee if they were made in the furtherance of the employment relationship.
According to Herasme, negligent selection claims are commonly heard in the Dominican Republic and may be brought under Articles 1383 and 1384 of the Code. The plaintiff must show that the defendant failed to exercise due care in selecting a contractor, that the contractor failed to perform in a competent manner, and that the plaintiff was injured. Herasme opines that parents could recover damages for negligent misrepresentation and negligent selection including the grief, pain and suffering of their child, the loss of the relationship of affection between the child and parents, and financial damages. According to Herasme, the statute of limitations for a negligent selection or negligent misrepresentation claim would be 20 years under Article 2262 of the Code. Herasme opines that in a wrongful death action, Dominican courts regard the waiver of the statute of limitations defense as a matter of personal interest to the parties and routinely honor such waivers.
Attorney Marcos Pena-Rodriguez (“Pena-Rodriguez”) has been licensed to practice law in the Dominican Republic since 1990 and teaches courses in civil procedure law. According to Pena-Rodriguez, he has found no cases decided by the Supreme Court of Justice of the Dominican Republic involving negligent misrepresentation and is not aware that any Dominican court has accepted such a theory of recovery. According to Pena-Rodriguez, the Dominican Supreme Court of Justice requires three things for liability: a faulty act or omission, harm, and a direct connection between the act and the victim’s harm. He does not believe that the Dominican courts would find GWV liable for its employee’s actions where the employee did not directly participate in provision of the negligent medical care. According to Pena-Rodriguez, the tort of negligent selection is not recognized by the Dominican Supreme Court of Justice, and an employer’s liability is limited to vicarious liability for an employee’s negligence and does not extend to an employer’s negligent selection of employees or contractors. Pena-Rodriguez does not know of any Supreme Court decision accepting the theory of negligent selection.
Pena-Rodriguez believes that the statute of limitations for the plaintiffs’ claims would be six months under Article 2271 of the Code, which governs negligence claims. The 20-year statute of limitations cited by Attorney Herasme, set forth at Article 2262 of the Code, is the general rule for civil actions, which applies where no other specific provision applies. Pena-Rodriguez opines that statutes of limitations are considered to have a public interest element, and therefore the Dominican courts can reject a claim based on the statute of limitations even if the parties have agreed to waive the defense.
Attorney Jose Perez Gomez (“Gomez”) has been licensed to practice law in the Dominican Republic since 1972 and is a professor of civil law and civil liability at the Universidad Pedro Henriquez Urena and the Iberoamericana University. According to Gomez, no legislative act, judicial opinion or treatise has expressly defined negligent misrepresentation or negligent selection as a cause of action in the Dominican Republic. Gomez opines that the statute of limitations for a negligence action is six months.
Rafael Tulio Perez de Leon (“de Leon") is a former judge of the Santo Domingo Court of Appeals. According to de Leon, there is no treaty or other agreement in force between the United States and the Dominican Republic which establishes a procedure whereby a Dominican court can compel a witness in the Dominican Republic to give sworn testimony for use in a United States action.

Plaintiffs’ Motion to Strike

The Herasme affidavit was translated by Francisco Collado (“Collado”), a law student in the Dominican Republic who is fluent in both English and Spanish. In Collado’s first affidavit, he stated that he was an attorney duly admitted to the Florida bar. However, an affidavit from an employee of the Florida bar certifies that Collado is not in fact a member of that bar. In a second affidavit, Collado explained that he is a notary public in the State of Florida with a commission until February of 2006, not a member of the bar, and the statement to the contrary in his first affidavit was the result of a mis-communication between him and counsel for GWV. According to documents plaintiffs uncovered in a public record search, Collado’s notary public commission expired in February of 2004, a month before he signed his original affidavit.
The plaintiffs argue that the inaccuracies in Collado’s affidavits are deliberate falsities evidencing a lack of credibility, and that this Court should not credit Collado’s translation of Herasme’s affidavits as accurate and should strike those affidavits from the record. This Court need not resolve that issue, however, because a second translator, Maria Covadonga Fernandez, an authorized judicial translator in the courts of the Dominican Republic for six years, has certified the accuracy of the translations. Accordingly, *45 the plaintiffs’ motion to strike the affidavits of Collado and Herasme is denied.

DISCUSSION

Under G.L.c. 223A, §5, an action may be dismissed upon finding “that in the interest of substantial justice the action should be heard in another forum.” A decision whether to dismiss under the doctrine of forum non conveniens lies in the discretion of the judge and depends greatly on the specific facts of the proceeding. W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. 572, 577 (1990); Joly v. Albeit Larocque Lumber Ltd., 397 Mass. 43, 44 (1986); Green v. Manhattanville College, 40 Mass.App.Ct. 76, 79, rev. den., 422 Mass. 1107 (1996).

Availability of Suitable Alternative Forum

In determining whether to dismiss an action under the doctrine of forum non conveniens, the most important factor to be considered is the availability of another suitable forum. The defendant bears the burden of proof on this issue. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.22 (1981), reh’g den., 455 U.S. 928 (1982); Green v. Manhattanville College, 40 Mass.App.Ct. at 81; Mercier v. Sheraton Inter., Inc., 981 F.2d 1345, 1349 (1st Cir. 1992), cert. den., 508 U.S. 912 (1993). An alternative forum is inadequate if it does not permit litigation of the subject matter of the dispute. Piper Aircraft Co. v. Reyno, 454 U.S. at 255 n. 22; Mercier v. Sheraton Inter., Inc., 981 F.2d at 1350; Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 757. The fact that the proceedings and remedies available in a foreign jurisdiction differ from, or are possibly less favorable than those in the Commonwealth does not render the foreign system inadequate. Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 758.
The plaintiffs’ negligence claim against GWV is premised on a theory of negligent selection: specifically, that GWV was responsible for ensuring that hotel guests received competent medical care and that the steps it took to ensure the competence of the Clinic medical staff were inadequate! The plaintiffs argue that the Dominican Republic is not an adequate alternative forum because the Dominican Civil Code and case law do not recognize a claim for negligent selection. As noted, attorney Pena-Rodriguez states in an affidavit that he has not found any case involving a claim of negligent selection and that he believes the Dominican courts would not recognize such a claim because Dominican courts recognize an employer’s liability for an employee’s conduct only if the employee’s conduct is negligent. He therefore opines that although an employer could be vicariously liable, it could not be directly liable for its own negligence in selecting an employee.
However, Attorney Herasme states that negligent selection claims are commonly heard in the Dominican Republic and that such claims may be brought under Article 1383 of the Code, which provides generally that “eveiyone is responsible for the harm he has caused, not only by an action, but also due to his negligence or imprudence.” Herasme states that the elements of such a claim are that the defendant failed to exercise due care in selecting a contractor, that the contractor failed to perform in a competent manner, and that the plaintiff was injured. This is consistent with Attorney Pena-Rodriguez’s statement in his affidavit that in order to impose liability for negligence, Dominican courts require proof of (i) a fault, act or omission; (ii) harm, and (iii) a direct connection between the act and the harm suffered by the victim. Thus, on the record before me, I find and rule that the defendants have shown that a negligent selection claim can be heard by the Dominican courts, despite Attorney Pena-Rodriguez’s inability to find specific precedent for such a claim.
Plaintiffs also contend that the Dominican courts do not recognize a claim for negligent misrepresentation. The plaintiffs’ negligent misrepresentation claim alleges that GWV made misrepresentations to Jennifer through AAA agent Mavrakos about the adequacy of medical care at the Hotel and that Harris misrepresented Jennifer’s condition and the adequacy of her care to the Gianocostases. Attorney Pena-Rodriguez states in his affidavit that he has not found any case involving a claim of negligent misrepresentation and that he does not believe that the Dominican courts would hold an employer vicariously liable for a negligent statement by an employee where the employee did not directly participate in the medical care which caused the injuiy. However, Attorney Herasme states that negligent misrepresentation claims are commonly heard in the Dominican Republic and that the elements of such a claim are a false statement, reliance by the plaintiff, and injuiy. According to Herasme, a claim of negligent misrepresentation is cognizable under Article 1383 of the Code, the general negligence provision, and Article 1384 of the Code, which states that masters and principals are liable for damages caused by their servants or agents during the course of their employment. On the record before me, the defendants have shown that a negligent misrepresentation claim can be heard by the Dominican courts, despite Attorney Pena-Rodriguez’s inability to find specific precedent for such a claim.
Nonetheless, the possibility that a plaintiffs action might be time-barred in another forum is an important consideration when ruling on a dismissal for forum non conveniens. Green v. Manhattanville College, 40 Mass.App.Ct. at 81. The Dominican attorneys who have submitted affidavits in this matter disagree on the relevant statute of limitations for the plaintiffs’ negligent selection and negligent misrepresentation claims. Several attorneys opine that it is 20 years, and others opine that it is only six months. There is thus a real possibility that the plaintiffs’ claims against GWV are time-barred in the Dominican Republic. *46 However, any unfairness arising from such a possibility would be remedied by conditioning an order of dismissal on defendant’s waiver of all statute of limitations defenses and on the Dominican court’s acceptance of such a waiver. Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 762-63; Green v. Manhattanuille College, 40 Mass.App.Ct. at 81-82. Accordingly, this Court concludes that the Dominican Republic is available as an adequate alternative forum in this matter.
The Balance of Private and Public Interests
It is settled law that the presumption in favor of a plaintiffs choice of forum may be overcome only when the private and public interest factors clearly point toward trial in the alternative forum. Kearsarge Metallurgical Corp. v. Peerless Ins. Co., 383 Mass. 162, 169 (1981); Gianocostas v. Riu Hotels., S.A., 59 Mass.App.Ct. at 759; Green v. Manhattanville College, 40 Mass.App.Ct. at 79. The defendant bears the burden of showing circumstances so strongly in his favor that the plaintiffs should be denied their right to bring suit in the Commonwealth. Walton v. Harris, 38 Mass.App.Ct. 252, 258, rev. den., 420 Mass. 1102 (1995).
The private interest factors to be considered include such factors as ease of access to sources of proof and availability of compulsory process for attendance of unwilling witnesses, the cost of attendance of witnesses and the possibility of a view of the premises, if appropriate to the action. New Amsterdam Cas. Co. v. Estes, 353 Mass. 90, 95 (1967); W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass, at 578; Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 759. In weighing these factors, this Court must focus on the nature of the claims and the precise issues likely to be actually tried against GWV. Gianocostas v. Riu Hotels., S.A., 59 Mass.App.Ct. at 758.
The public interest factors to be considered include the administrative burdens caused by litigation that has its origins elsewhere, the local interest in having localized controversies decided at home and the desirability of trial in a forum familiar with the governing law. New Amsterdam Cas. Co. v. Estes, 353 Mass, at 96; W.R. Grace & Co. v. Hartford Accident & Indem Co., 407 Mass. at 578; Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 761.
With these factors in mind, I address each of the plaintiffs’ claim against GWV.

Negligent Selection Claim

With respect to the negligent selection claim, the plaintiffs alleges that GWV inspected the Hotel and the medical services offered and then advertised and promoted the Hotel to Massachusetts residents. In this claim, plaintiffs also allege that GWV knew or should have known that the medical services provided by the Hotel through the Clinic were substandard. The plaintiffs’ theory of negligence is that GWV was responsible for ensuring that hotel guests received competent medical care but took inadequate steps to ensure that the Hotel provided competent care. See Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 757.
To prevail on this claim, plaintiffs must first show that the Clinic did not provide Jennifer with competent care. As noted by the Appeals Court, this issue depends on the testimony of Dominican medical personnel and records in their control which cannot be compelled in a Massachusetts forum. See Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 760.
Plaintiffs must also show that GWV knew or should have known that the level of medical care provided at the Clinic was substandard. See Restatement (Second) of Torts §307 (1961). This requires a showing concerning the quality of medical care at the Clinic, with respect not only to Jennifer’s treatment, but treatment provided generally to all patients in some time period before GWVs decision to select the Hotel, and thus the Clinic, as the medical provider for tour participants. Witnesses with information concerning the reputation of and past experience with the Clinic, including Hotel employees, will likely be located in the Dominican Republic.
GWVs ability to defend itself against a claim of negligent selection thus depends overwhelmingly on access to witnesses and documents located in the Dominican Republic. Cf. Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 760 n. 11. Accordingly, the private interest factors weigh strongly in favor of the Dominican Republic as the appropriate forum for the negligent selection claim.
In addition, the public interest factors point to the Dominican Republic as the forum with the greatest connection to the negligent selection claim. It appears on the limited record before me that Dominican law may substantially accord with Massachusetts law with respect to negligent selection. To the extent, however, that the law of the two jurisdictions conflicts, Dominican law would likely govern the claim against GWV. Under §146 of the Restatement (Second) of Conflict of Laws, in tort cases involving personal injury the law of the state where the injury occurred applies unless some other state has a more significant relationship to the occurrence and parties in accordance with the factors listed in §6 of the Restatement. Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 647 (1994); Dasha v. Adelman, 45 Mass.App.Ct. 418, 423, rev. den., 428 Mass. 1107 (1998). Those factors are the relevant policies of the forum, the relevant policies of other interested states and their relative interests in the determination of the particular issue, the basic policies underlying the particular field of law, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied. Cosme v. Whitin Machine Works. Inc., 417 Mass. at 647 n. 6; Dasha v. Adelman, 45 Mass.App.Ct. at 423-24 n. 10.[3] In applying the §6 factors, the court *47 is to consider contacts including the place where the injury occurred, the place where the conduct causing the injuiy occurred, the domicile, residence, place of incorporation and place of business of the parties, and the place where the parties’ relationship is centered. Cosme v. Whitin Machine Works, Inc., 417 Mass. at 646-47 & n.3.
With respect to the negligent selection claim, the injuiy — Jennifer’s receipt of substandard medical care leading to her death — occurred in the Dominican Republic. It is not entirely clear where the conduct causing that injury occurred, but GWV’s alleged inspection of the Hotel facilities occurred in the Dominican Republic, although the ultimate decision to select the Clinic as the care provider for tour participants may well have occurred in Massachusetts. The fact that the domicile of the plaintiffs and the place of business of the defendant are grouped in a single state is an important factor to be considered in determining the applicable law, particularly if either the plaintiffs’ injuiy or the defendant’s conduct occurred there. Cosme v. Whitin Machine Works, Inc., 417 Mass. at 649.
Here, however, neither the plaintiffs’ injury nor most of the conduct causing that injuiy occurred in Massachusetts. In determining which law applies to a negligent hiring claim, the court should focus on the place where the defendants’ employment relationship is centered. York Ins. Co. of Maine v. Schultz, 307 F.Sup.2d 108, 111-12 (D.Me.). Here, the relationship between GWV and the Hotel and Clinic is centered in the Dominican Republic, since GWV selected the Clinic to provide medical care to tour participants staying in the Hotel there. The Dominican Republic has an interest in having its law apply, since that is where Jennifer was injured, and the Dominican Republic also has an interest in ensuring the safety of visiting tourists.
Massachusetts also has a significant interest in applying its law, as the crux of the negligent selection claim is that GWV failed in its responsibility to ensure that Massachusetts residents who booked trips to the Hotel received competent medical care. See Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 761 (noting that Massachusetts has an interest in regulating the travel industry conducting business within its borders). Massachusetts also has an interest in seeing plaintiff Massachusetts residents compensated and in holding a resident business, GWV, accountable for its conduct. See Cosme v. Whitin Machine Works, Inc., 417 Mass. at 649; Dasha v. Adelman, 45 Mass.App.Ct. at 426. Nonetheless, weighing all the Restatement factors, this Court concludes that Massachusetts does not have the most significant relationship to the negligent selection claim. Thus, the law of the place of injury, the Dominican Republic, would likely apply. Although not dis-positive, the need to apply foreign law favors dismissal. See Minnis v. Peebles, 24 Mass.App.Ct. 467, 470 (1987); Mercier v. Sheraton Intern., Inc., 981 F.2d at 1357. The public interest factors of the local interest in having localized controversies decided at home, and the desirability of trial in a forum that is familiar with the governing law thus weigh in favor of the Dominican forum. See New Amsterdam Cas. Co. v. Estes, 353 Mass. at 96; W.R. Grace & Co. v. Hartford Accident & Indem Co., 407 Mass. at 578; Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 761.
Both the private and public interest factors clearly point toward trial of the negligent selection claim in the Dominican Republic. Balancing all the forum non conveniens considerations, this Court concludes that GWV has met its burden of showing circumstances so strongly in its favor that the plaintiffs should be denied their right to proceed with this claim in the Commonwealth.

Negligent Misrepresentation Claim

In my view, the negligent misrepresentation stands on different footing. As to this claim, plaintiffs allege that Harris negligently represented to the Gianocostases that Jennifer’s care was “excellent” and that she was in good hands at the hotel clinic and that her condition was “improving.’’
To prevail on a claim of negligent misrepresentation, plaintiffs must prove that Harris negligently made a false statement of fact on which the plaintiffs relied. To the extent that Harris disputes that certain statements were actually made, relevant witnesses include Harris, who resides in New Hampshire, and the Gianocostases, who are Massachusetts residents. However, Harris is now a employee of GWV, and GWV represents that it would compel her attendance in the Dominican courts should the case proceed there. Although it is possible that one or more third parties in the Dominican Republic may have overheard Harris’s telephone conversations with the Gianocostases, no such witnesses have been identified at this point. A critical element of the plaintiffs’ claim, and GWV’s defense of that claim, is the truth or falsity of Harris’s statements concerning the quality of the care received by Jennifer and her condition. Although Jennifer’s friends and Mrs. Gianocostas may have relevant testimony on the issue of whether Jennifer’s care was good and her condition was improving, the critical witnesses and documents concerning the medical care rendered to Jennifer and her condition during the relevant period are located largely in the Dominican Republic.[4] See Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 760. The private factors thus weigh in favor of the Dominican forum on this aspect of the negligent misrepresentation claim.
To the extent, however, that the plaintiffs assert a negligent misrepresentation claim based on statements GWV made to Jennifer in Massachusetts before her booking her trip, such statements were allegedly presented through AAA travel agent Mavrakos, who *48 resides in Massachusetts and whose attendance cannot be compelled in the Dominican Republic. In addition, other witnesses who may have information concerning what Jennifer was told about the Hotel include her parents and friends, who are located in Massachusetts. Overall, therefore, the private interest factors do not point strongly to either forum.
However, the public interest factors as to this claim favor Massachusetts. To the extent that the law of the two jurisdictions conflicts, Massachusetts law would likely govern the negligent misrepresentation claim against GWV. With respect to a negligent misrepresentation claim based on Harris’s statements to the Gianocostases, those statements were made in the Dominican Republic and the injury sustained there. The relationship between Jennifer and her parents and Harris was centered in the Dominican Republic, and the Dominican Republic has an interest in regulating the conduct of travel representatives such as Harris working within its borders. With respect to a claim based on GWVs statements to Jennifer before she booked her trip, the conduct which caused the injury occurred in Massachusetts, although the injury, Jennifer’s receipt of substandard medical care leading to her death, occurred in the Dominican Republic. The relationship between Jennifer and GWV was centered in Massachusetts, where she received the information about the Hotel and signed the travel contract booking the trip.[5]
In addition, Massachusetts has a strong interest in seeing that travel providers in the state, such as GWV, make accurate representations to individuals booking their vacations in Massachusetts and that their agents in foreign locations provide Massachusetts residents with accurate information. See Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 761 (noting Massachusetts has interest in regulating travel industry conducting business within its borders). Massachusetts also has an interest in seeing plaintiff Massachusetts residents compensated and in holding a resident business, here GWV, accountable for its conduct. See Cosme v. Whitin Machine Works, Inc., 417 Mass. at 649; Dasha v. Adelman, 45 MassA.pp.Ct. at 426. That the domicile of the plaintiffs and the place of business of the defendant are grouped in a single state is an important factor in determining applicable law, particularly where some of the defendant’s conduct occurred in that state. Cosme v. Whitin Machine Works, Inc., 417 Mass. at 649.
Thus, although the injury occurred in the Dominican Republic, I find and rule that Massachusetts has the most significant relationship to the negligent misrepresentation claim and Massachusetts law would likely apply. See Knoell v. Cerkvenik-Anderson Travel, Inc., 891 P.2d 861, 868 (Ariz.App.Div. 1994), vacated on other grounds, 917 P.2d 689 (Ariz. 1996) (where minor from Arizona died after becoming intoxicated and falling from balcony of hotel in Mexico, Arizona law applied to parents’ negligent misrepresentation claim against Arizona travel agency which represented that minor would be adequately supervised' on trip to Mexico).
Thus, the public interest factors of having localized controversies decided at home, and the desirability of trial in a forum familiar with the governing law weigh in favor of a Massachusetts forum. See Gianocostas v. Riu Hotels, S.A., 59 Mass.App.Ct. at 761 (noting that if Massachusetts law governs, this weighs heavily in favor of Massachusetts forum). Given the presumption in favor of the plaintiffs’ choice of forum, the fact that private interest factors point to the Dominican Republic with respect to one aspect of the claim is insufficient to meet GWVs burden of showing circumstances so strongly in its favor as to deny plaintiffs their right to bring the negligent misrepresentation claim in the Commonwealth.

ORDER

For the foregoing reasons, it is hereby ORDERED:
1. Plaintiffs’ motion to strike the affidavits of Francisco E. Collado and Diogenes Herasme is DENIED:
2. Defendant GWVs motion to dismiss for forum non conveniens is ALLOWED as to the negligence claim in Count III of the complaint, but only on the condition that GWV agrees in writing to waive defenses based on the statute of limitations and lack of personal jurisdiction and any requirement that plaintiffs post a bond, and on the further condition that the courts of the Dominican Republic give full force and effect to such waivers;
3. GWVs motion to dismiss for forum non conveni-ens is DENIED as to the negligent misrepresentation claim in Count IV of the complaint;
It is further ORDERED that this Court’s June 27, 2001 allowance of the Riu defendants’ motion to dismiss for forum non conveniens is hereby conditioned on a written agreement by the Riu defendants to waive defenses based on the statute of limitations and lack of personal jurisdiction and any requirement that the plaintiffs post a bond, and on the further condition that the courts of the Dominican Republic give full force and effect to such waivers.

In personal injury actions the additional §6 factors of the needs of the interstate and international systems and the protection of justified expectations will rarely be important. Cosme v. Whitin Machine Works, Inc., 417 Mass, at 650.

This Court notes that the availability of expert witnesses on this issue may not be as significant as the availability of fact witnesses. See Iragorri v. International Elevator, Inc., 203 F.3d 8, 17 (1st Cir. 2000).

That Jennifer acted on the misrepresentations in Massachusetts by booking her trip is relevant, although when false representation results in physical injury, the general tort factors of §146 apply, not necessarily the fraud factors in §148. See Restatement (Second) Conflict of Laws cmt. a to §148 (1971).