MARILYN GIANOCOSTAS & another,[1] administrators,[2] vs.
INTERFACE GROUP-MASSACHUSETTS, INC.[3]

Middlesex. January 8, 2008. - February 26, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Jurisdiction,* Forum non conveniens. *Negligence,* Wrongful death, Mis-
representation.

In a civil action arising from the death of the plaintiffs' daughter due to the al-
leged failure of medical personnel to recognize and treat her diabetes-
related symptoms that developed while she was vacationing in the Dominican
Republic, the judge erred in denying a motion brought by one defendant (a
Massachusetts-based tour operator) to dismiss claims of wrongful death
and negligent misrepresentation on grounds of forum non conveniens,
where the law of the Dominican Republic permitted recovery for the
plaintiffs in the type of circumstances presented, where the private interests
involved strongly favored trial in the Dominican Republic, and where the
interest that Massachusetts has in assuring that local tour operators provid-
ing assistance in foreign locations furnish Massachusetts citizens with ac-
curate information did not outweigh the Dominican Republic's interest in
litigation concerning the standard of medical care provided to travelers by
residents of that country. [723-727]
This court did not reach the question whether to adopt principles set forth in
the Restatement (Second) of Torts § 311 (1965), describing the tort of
negligent misrepresentation that results in physical injury, a tort that is not
a recognized cause of action in Massachusetts at this time. [727-728]

CIVIL ACTION commenced in the Superior Court Department on
June 21, 2000.

After review by the Appeals Court, 59 Mass. App. Ct. 753
(2003), a renewed motion to dismiss and a motion for summary
judgment were heard by *H.J. Smith, Jr.,* J., and entry of final
judgment was ordered by *Wendie I. Gershengorn,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

[1] George Gianocostas.

[2] Of the estate of Jennifer Gianocostas.

[3] Doing business as GWV International. Riu Hotels, S.A.; Riusa, II, S.A.;
Delta Holidays, Ltd.; Visantilla, A.I.E.; and Macao Caribe Beach, S.A., are
not parties to this appeal.

*David C. Kravitz (Daniel J. Dwyer & Timothy P. O'Neill* with him) for the plaintiffs.

*Rodney E. Gould (Robert C. Mueller & Melissa B. Paradis* with him) for the defendants.

The following submitted briefs for amici curiae:

*Deborah J. La Fetra & Timothy Sandefur*, of California, for Pacific Legal Foundation.

*United States Tour Operators Association*, pro se.

*Darin L. Wessel* for Manning & Marder, Kass, Ellrod, Ramirez, LLP.

GREANEY, J. In March, 1999, Jennifer Gianocostas, a twenty year old college student, became ill while vacationing at a hotel in Puerto Plata, Dominican Republic. Following several days of treatment at the hotel's medical clinic, Jennifer, an insulin-dependent diabetic, was transferred to a local hospital. Her condition worsened, and the next day she was transported to a hospital in Miami, Florida. By that time, Jennifer's medical condition was critical. She died the following month, as a result of complications from severe diabetic ketoacidosis. Her parents, George Gianocostas and Marilyn Gianocostas, as administrators of Jennifer's estate, commenced a wrongful death action in the Superior Court, based on claims of negligence against the Hotel Riu Mambo; its corporate parent, Riu Hotels, S.A.; and related foreign corporate entities (together, Riu Hotels), and against GWV International (GWV), the Massachusetts-based tour operator through which Jennifer had arranged the vacation. George and Marilyn (who are divorced) additionally claimed negligent misrepresentation against GWV based on alleged statements made to them by a GWV tour representative in Puerto Plata, with respect to the quality of medical care their daughter was receiving there.

The defendants maintained that the plaintiffs' claims should be tried in the Dominican Republic. A judge in the Superior Court agreed and allowed their motions to dismiss on the ground of forum non conveniens. On appeal, the Appeals Court concluded that the Dominican Republic was the preferable forum for the plaintiffs' claims against the Riu Hotels, but questioned whether the Dominican Republic provided an adequate forum in which to bring the plaintiffs' claims against GWV. *Gianocostas* v. *Riu*

*Hotels, S.A.,* 59 Mass. App. Ct. 753, 758-759 (2003). Accordingly, that court vacated the judgment of dismissal and remanded the case to the Superior Court for a determination "whether the Dominican Republic offers an adequate remedy with respect to the plaintiffs' claims against GWV and, if so, whether the action should proceed against the defendants jointly in Massachusetts or the Dominican Republic, or whether the action against GWV should be tried separately in Massachusetts and the action against Riu Hotels should proceed in the Dominican Republic." *Id.* at 762-763.

On remand, the judge allowed GWV's motion to dismiss the negligence claim on forum non conveniens grounds, but allowed the plaintiffs' claims of negligent misrepresentation and wrongful death against GWV to proceed in Massachusetts.[4] The judge refused to reconsider that part of her decision denying the motion to dismiss. The defendants challenged the judge's decision by filing a petition for interlocutory relief pursuant to G. L. c. 231, § 118, first par., and a single justice of the Appeals Court denied relief. Following discovery, a different judge in the Superior Court denied GWV's renewed motion to dismiss for forum non conveniens (which he treated as a renewed motion to reconsider the denial of the motion to dismiss).[5] Considering the merits of the claims of negligent misrepresenta-

[4]One aspect of the judge's ruling requires explanation. The judge apparently assumed that the Appeals Court's approval of the Dominican Republic as the appropriate forum for the claims against the Riu Hotel defendants constituted an affirmance of the judgment of dismissal with respect to those claims. The record confirms that this assumption was incorrect. As explained above, the Appeals Court vacated the judgment of dismissal, not only with respect to GWV but also with respect to the Riu Hotel defendants. *Gianocostas* v. *Riu Hotels, S.A.,* 59 Mass. App. Ct. 753, 762-763 (2003). This presents a slight wrinkle in an otherwise smooth procedural background, but it has no substantive effect on our resolution of the issues raised in this case.

[5]The judge's memorandum of decision and order for judgment on the defendant's motion for summary judgment and renewed motion to dismiss makes clear his reluctance to revisit the forum non conveniens issue, which, the judge reasoned, had already been decided in the plaintiffs' favor. He stated: "While this Court recognizes that evidence of the [plaintiffs'] claim of negligent misrepresentation converges in the Dominican Republic, this Court is not inclined to depart from the [the judge's decision on remand]. This disinclination is bolstered by the fact that GWV unsuccessfully moved [that judge] for reconsideration of her decision and the [Appeals Court] declined interlocutory review and reversal of that same decision."

tion and wrongful death, however, the judge concluded that the plaintiffs had failed to demonstrate a reasonable expectation of proving their claim of negligent misrepresentation, and granted summary judgment in favor of GWV on both claims. The plaintiffs appealed from the allowance of summary judgment, and GWV cross-appealed from the denial of its renewed motion to dismiss on the basis of forum non conveniens. We transferred the case here on our own motion, and for the following reasons, we now vacate the challenged orders and remand the case to the Superior Court for entry of an order of dismissal based on forum non conveniens.

1. We summarize the relevant facts in the light most favorable to the plaintiffs. Jennifer was diagnosed with Type 1 insulin-dependent diabetes in May, 1996. In the spring of 1999, Jennifer and two of her friends, Jacquelyn Dondero and Cheryl Darrigo, decided to purchase a one-week vacation package at the Hotel Riu Mambo in Puerto Plata, Dominican Republic. Their decision to purchase the package, one of many offered by GWV and sold through an American Automobile Association (AAA) travel office in Saugus, was based on information supplied to them by Anthony Mavrakos, a travel agent at the AAA office. Before purchasing the package, Jennifer informed Mavrakos that she was diabetic and expressed specific needs about traveling with insulin. Mavrakos told Jennifer that the Hotel Riu Mambo had a refrigerator in the room and that the hotel had an on-site medical clinic.

On Saturday, March 13, 1999, Jennifer and her friends arrived in the Dominican Republic and were met by Janet M. Harris, a tour representative for GWV. During Harris's orientation briefing, she provided her telephone number should they have any problems or need any assistance during their stay at the hotel. Jennifer was in good health that day and all of the next day.

On Monday evening, the three women left the hotel to go to a karaoke bar, but returned early because Jennifer was not feeling well. When Jennifer began vomiting, Jacquelyn went to the hotel reception desk and spoke by telephone with a hotel doctor. She told the doctor that Jennifer was sick and that she was diabetic. The doctor did not appear to understand the words

"diabetic" or "diabetes." He advised Jacquelyn to go the hotel pharmacy in the morning to purchase Imodium. When Jennifer continued to vomit, Jacquelyn attempted, unsuccessfully, to reach Janet Harris using the telephone number provided at orientation. Late that evening, Jacquelyn reached her mother by telephone, who suggested that Jennifer should drink flat ginger ale.

On Tuesday morning, Marilyn Gianocostas received a telephone call from Jacquelyn's mother informing her of Jennifer's illness and of Jacquelyn's conviction that the hotel doctor had not understood the words "diabetic" or "diabetes." Marilyn responded by placing telephone calls to the answering service for Jennifer's endocrinologist, Dr. Timothy D. Stryker (leaving a detailed message of the information she had received and requesting a call back) and to Jennifer in the Dominican Republic. Jennifer assured her mother that she was feeling better, that she had been testing her blood sugar levels, and that everything was fine. Later that day, Marilyn spoke by telephone to an associate of Dr. Stryker, who was on call for Dr. Stryker's service. The physician told Marilyn that he, or Dr. Stryker, would contact doctors in the Dominican Republic about Jennifer's condition. Still later that day, Marilyn called the GWV home office in Saugus and informed a GWV employee that Jennifer's friends had been unable to contact their tour representative in Puerto Plata about Jennifer's illness. The employee told Marilyn that she would convey the information to Harris and that Harris would contact Jennifer.

Meanwhile that day, in the Dominican Republic, Jennifer appeared to feel better, and she and her friends sat by the swimming pool during the day. Harris did contact Jennifer and recommended an island drink known as a "Mambo" to alleviate her symptoms.[6] That evening, Jennifer spoke to her father, George Gianocostas, and told him that she was feeling lightheaded. Jennifer assured George that she had been testing her blood sugar level and that she was fine. After his conversation with Jennifer, George telephoned Dr. Stryker's office and left a mes-

[6]Although Jacquelyn understood that Harris told Jennifer to drink a "Mambo," the recommended drink, according to Harris, was a "Bomba." Harris states in her affidavit that she did not learn that Jennifer was a diabetic until the next day (Wednesday).

sage requesting that Dr. Stryker contact Jennifer in the Dominican Republic. Dr. Stryker spoke with Jennifer on the telephone, either that evening or another time. He too, apparently, believed that Jennifer's illness was nothing more than a common stomach ailment.

On Wednesday morning, Jennifer told her friends she was not feeling well and walked by herself to the hotel clinic. When Jacquelyn and Cheryl arrived at the clinic shortly thereafter, Jennifer was receiving intravenous fluids. The clinic doctor, who spoke English, told Jacquelyn and Cheryl that Jennifer was dehydrated, but that she would be fine and would be discharged the next day. Jennifer spoke normally to Jacquelyn and Cheryl, and the two friends left. That day Jacquelyn unsuccessfully attempted to contact Janet Harris.

On Wednesday, Marilyn reached Harris by telephone and requested that she check on Jennifer at the clinic. She informed Harris that Jennifer was a diabetic, that she was concerned, and that the clinic doctors did not seem to understand. Marilyn told Harris that she would fly down to bring her daughter home if Jennifer could not receive proper medical care in the Dominican Republic. In response, Harris stated to Marilyn that Jennifer's condition was improving and that there was no need to fly down. Harris said that she had dealt with the clinic before, that people had gone there, and that they had never had a problem.

That same day, Harris had several telephone conversations with George. Harris stated to George that Jennifer was suffering from a stomach problem that Harris saw all the time, and that Jennifer would be fine. George then told Harris that he would fly down immediately to bring his daughter home for medical care if she were at any risk because of her diabetes. Harris said that there was no need for George to fly down and that Jennifer was in very good hands at the hotel clinic. Harris told George that she was from Portsmouth, New Hampshire, and that the medical care in Puerto Plata was excellent. Harris told George that she had a break every two hours and that she would check on Jennifer during every break.[7] When George made telephone

---

[7] Harris disputes that she ever made this statement. According to Harris, she told George on Wednesday that she "did not think that [Jennifer] was well or strong enough to fly home."

contact with the clinic later that evening, he was told that Jennifer was "resting."

There was no communication between Harris and either George or Marilyn on the entire day of Thursday. That morning, Jennifer was discharged from the hotel clinic and transported by ambulance to her hotel room. The clinic doctor assured Jacquelyn that Jennifer "would be jet skiing the next day." On Thursday evening, at Jennifer's request, Harris purchased some chicken noodle soup and arranged for a bellboy to deliver it to Jennifer's room. That evening, Jennifer became very ill. After at least two telephone calls, a clinic doctor came to the room. Though he appeared annoyed, he agreed to readmit Jennifer to the clinic. Because Jennifer was too weak to walk, she was transported back to the clinic by way of a luggage cart. Jacquelyn called Marilyn by telephone to report that Jennifer had been readmitted to the clinic.

At approximately 4:30 A.M. on Friday morning, the clinic doctor telephoned Jacquelyn and asked her to bring Jennifer some food. Not knowing where to purchase food at that time, Jacquelyn did not comply with the request. At 6 A.M., the doctor telephoned again, this time asking for the device that Jennifer used to test her blood sugar. When Jacquelyn and Cheryl brought the device to the clinic, they were alarmed to find that Jennifer was hallucinating and that her eyes were rolling back in her head.

Jennifer was transferred that morning on an emergency basis to Bournigal Clinic, a private hospital in Puerto Plata. On arrival there she was diagnosed with acute severe diabetic keto-acidotic coma, severe metabolic acidosis, and severe dehydration. On being informed of Jennifer's deteriorated condition, Marilyn made immediate plans to fly to the Dominican Republic. She telephoned Harris, who was unaware that Jennifer had been hospitalized. Harris told Marilyn that there was no need for her to come. Marilyn nevertheless left Boston and arrived in the Dominican Republic at approximately 8 P.M. Friday evening. On Saturday, March 20, Jennifer was evacuated from the Dominican Republic by an air ambulance and admitted, in critical condition, to Jackson Memorial Hospital in Miami, Florida. She died on April 20, 1999.

On June 21, 2000, George and Marilyn (hereinafter the plaintiffs) commenced this litigation against the Riu Hotels and

GWV. As indicated, the only claim remaining in Massachusetts is that of negligent misrepresentation against GWV. The claim is based on separate statements made by Harris to the plaintiffs on Wednesday, March 17, concerning Jennifer's medical condition and the quality of care available to Jennifer in Puerto Plata.[8] The plaintiffs' position is that Harris's statements[9] were false and, as a result of the false statements, the plaintiffs delayed their efforts to evacuate their daughter from the Dominican Republic. The plaintiffs claim that had they evacuated Jennifer sooner, she would have received proper medical treatment, thereby preventing the fatal deterioration of her health. The plaintiffs assert that under principles set forth in Restatement (Second) of Torts § 311 (1965),[10] describing the tort of negligent

---

[8]The plaintiffs' original complaint against GWV contained allegations that Anthony Mavrakos, the travel agent at AAA, falsely informed Jennifer that her room at the hotel would have a refrigerator for her insulin and that the hotel had an on-site medical clinic. Discovery was undertaken after the case was remanded to the Superior Court, and the plaintiffs no longer contend that any information given Jennifer by Mavrakos was untrue.

[9]The plaintiffs point to two specific statements made by Harris on Wednesday, March 17, that, they allege, misrepresented both the seriousness of Jennifer's condition and the quality of care she was receiving: (1) to Marilyn, that Jennifer's condition was improving and that there was no need for her to come down; (2) to George, that Jennifer suffered from a stomach ailment that Harris saw all the time, that Jennifer was in good hands at the hotel clinic, and that medical care in Puerto Plata was excellent. They also base their claim of liability on Harris's alleged promise to George, made that same day, that she would check on Jennifer's condition during scheduled breaks from her duties as GWV tour representative, which occurred every two hours.

[10]Restatement (Second) of Torts § 311 (1965), concerning negligent misrepresentation that involves risk of physical harm, reads:

> "(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

> "(a) to the other, or

> "(b) to such third persons as the actor should expect to be put in peril by the action taken.

> "(2) Such negligence may consist of failure to exercise reasonable care

> "(a) in ascertaining the accuracy of the information, or

> "(b) in the manner in which it is communicated."

misrepresentation leading to physical injury or death, GWV is liable for their daughter's death. GWV denies that factual misstatements were made to the plaintiffs. Moreover, GWV asserts that any reliance on the part of the plaintiffs on statements made by a person with no apparent medical expertise, concerning Jennifer's health or the quality of care she was receiving, was unreasonable. We need not address any aspect of this claim, however, because we conclude that a court in Massachusetts is not the appropriate forum in which to resolve it.

2. "Assuming jurisdiction and venue are proper, dismissal on the ground of forum non conveniens will rarely be granted . . . ." *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. 162, 169 (1981). On motion, however, a judge may decline to hear a case, if there is an alternative forum in which justice may be had, and if the balance of private and public concerns strongly favor the defendant's motion. See *New Amsterdam Cas. Co.* v. *Estes*, 353 Mass. 90, 94-96 (1967), quoting *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508-509 (1947). In general terms, the doctrine of forum non conveniens provides that, "where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum." *Universal Adjustment Corp.* v. *Midland Bank, Ltd.*, 281 Mass. 303, 313 (1933). The principle is the same under the statutory formulation. See G. L. c. 223A, § 5, inserted by St. 1968, c. 760 (dismissal may be appropriate "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum"). Decisions to grant or deny motions to dismiss on the ground of forum non conveniens are left to the discretion of the trial judge, see *W.R. Grace & Co.* v. *Hartford Acc. & Indem. Co.*, 407 Mass. 572, 584 (1998); *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.*, *supra* at 168, and abuse of a judge's exercise of discretion on this matter will not usually be found. See *id.* at 168-169, quoting *Universal Adjustment Corp.* v. *Midland Bank, Ltd.*, *supra* at 318 ("The determination of the trial judge not to retain jurisdiction of the case at bar, so far as it involved an element of discretion, is not open to criticism").

As has been stated, the judge originally ordered that the

plaintiffs' entire cause of action in connection with their daughter's death be dismissed in favor of an alternative forum in the Dominican Republic. This order was vacated by the Appeals Court, with instructions to reconsider whether the Dominican Republic would provide an adequate forum for the plaintiffs' claims against GWV. The Appeals Court reasoned that, although the judge had concluded that the Dominican Republic "permits litigation of the subject matter in dispute," the appellate record contained no conclusive proof that the precise claims asserted against GWV, for negligent misrepresentation and negligent selection,[11] were recognizable causes of action in the Dominican Republic. See *Gianocostas* v. *Riu Hotels, S.A.*, 59 Mass. App. Ct. 753, 758-759 (2003). It was on remand that the judge, guided by what had been said by the Appeals Court, concluded, after an analysis of the adequacy of the forum as well as the private and public interests involved, that the Dominican Republic was the appropriate forum for the plaintiffs' claim of negligence, but that Massachusetts was the appropriate forum for the plaintiffs' claim of negligent misrepresentation. The deference owed to the judge's decision to deny GWV's motion to dismiss with respect to the negligent misrepresentation claim, therefore, is counterbalanced in this case by the deference owed to the same judge's earlier order allowing the motion to dismiss.

We also point out that, as indicated in her memorandum of decision and order on GWV's motion to dismiss following remand from the Appeals Court, the judge's conclusion that the plaintiffs' negligence misrepresentation claim should be litigated in Massachusetts was based, in substantial part, on the existence of alleged misrepresentations made to Jennifer in Saugus through AAA's travel agent, Anthony Mavrakos, on behalf of GWV. In determining that the private interest factors, taken as a whole, did not point strongly to either forum, the judge specifically

---

[11]It is clear from its opinion that the Appeals Court understood the plaintiffs' negligence claim to be premised primarily on a theory of negligent selection, that is, that GWV (based in Massachusetts) had taken insufficient steps to ensure the competence of medical staff at the hotel clinic. See *Gianocostas* v. *Riu Hotels, S.A.*, 59 Mass. App. Ct. 753, 758-759 (2003). The negligence claim, having ultimately been dismissed on the ground of forum non conveniens, is no longer before us, and we do not address the accuracy of the Appeals Court's characterization of that claim.

reasoned that Mavrakos "resides in Massachusetts and [his] attendance cannot be compelled in the Dominican Republic." The plaintiffs no longer contend that Mavrakos's representations to Jennifer were false (see note 8, *supra*), and, indeed, now premise their claim only on alleged misrepresentations made by Harris in the Dominican Republic. Because Mavrakos's alleged misrepresentations marked a significant Massachusetts contact on which the judge relied, that portion of the judge's reasoning is not applicable to our analysis.

The first factor we consider in considering dismissal on the ground of forum non conveniens is whether the law of the alternative forum permits recovery for the plaintiffs in the type of circumstances presented. The defendants carry the burden of proof on this issue. See *Mercier* v. *Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir. 1992), cert. denied, 508 U.S. 912 (1993). The record contains affidavits of six lawyers licensed to practice in the Dominican Republic. Four lawyers indicate that reparations may be sought, under the Dominican Civil Code, for negligent misrepresentations causing physical injury. One lawyer states that Dominican courts would not recognize such a claim, and the remaining lawyer appears inconclusive on the question. The plaintiffs make no argument in their brief that, as a matter of law, a plaintiff cannot recover for negligent misrepresentation in the Dominican Republic. The Appeals Court correctly recognized that "the fact that the proceedings and remedies available in the foreign jurisdiction differ from, or are possibly less favorable [to a plaintiff] than, those in the Commonwealth does not render the alternative system inadequate." *Gianocostas* v. *Riu Hotels, S.A.*, *supra* at 758, citing *Alcoa S.S. Co.* v. *M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir.), cert. denied, 449 U.S. 890 (1980); *LTX Corp.* v. *Daewoo Corp.*, 979 F. Supp. 51, 59 n.7 (D. Mass. 1997), aff'd, 141 F.3d 1149 (1st Cir. 1998); and *Minnis* v. *Peebles*, 24 Mass. App. Ct. 467, 470 (1987). We consider this factor satisfied, and turn to the particular interests involved.

The plaintiffs appear to agree that at the core of all of their claims in connection with Jennifer's death is the alleged medical malpractice that occurred in the Dominican Republic.[12] In her decision on remand, the judge determined that the Dominican

---

[12]The plaintiffs state in their brief that Jennifer's death resulted from a

Republic is the proper forum to hear the plaintiffs' claims against the Riu Hotels and their claim of negligence against GWV, and the plaintiffs have not appealed from those determinations. If the plaintiffs assert those claims in the Dominican Republic, most, if not all, of the litigation will center on live testimony concerning the quality of medical care Jennifer received in Puerto Plata. The same is true of the only claim remaining in this court, resolution of which will be dependent on the accuracy of Harris's statements to the plaintiffs that Jennifer was receiving good (or excellent) medical care. To the extent that the plaintiffs argue that Harris's statements to them were part of a pattern of conduct required by GWV of its tour representatives, for financial gain or otherwise, the evidence will undoubtedly overlap extensively with evidence presented in their negligence case against GWV in the Dominican Republic.

Janet Harris now resides in New Hampshire and no longer is employed by GWV. She has, however, submitted an affidavit in which she agrees to appear in any forum in which the plaintiffs' claims against GWV are heard. All of the medical personnel who were in contact with Jennifer during the relevant time period are in the Dominican Republic, as are all clinic and hospital records. Affidavits in the record indicate that there is no avenue by which their appearance, or their sworn testimony, may be compelled by a court in Massachusetts. We reject the plaintiffs' implicit assumption that medical charts in the record and affidavits of physicians practicing in the Commonwealth will suffice to prove (or disprove) that Jennifer was, in fact, very ill and receiving substandard care on Wednesday, when Harris assured them otherwise. Likewise, any evidence that may be available tending to show that medical care in the Dominican Republic is not generally good or excellent (as Harris allegedly implied) will depend on testimony regarding the record and reputation of the two facilities. Judicial notice may be taken of the likely fact that witnesses on this issue would be Dominican residents, and as stated, neither the parties nor a Massachusetts court can compel their testimony. In sum, the plaintiffs will be unable to succeed on their claim of negligent misrepresentation, and GWV unable

"catastrophic failure to recognize and treat diabetes-related symptoms that manifested [themselves] while she was on vacation in the Dominican Republic."

adequately to defend against it, unless the claim is litigated in the Dominican Republic. The private interests strongly favor trial in the Dominican Republic.

We now consider the public interests. We agree with the plaintiffs that Massachusetts has a clear interest in assuring that local tour operators providing assistance in foreign locations furnish Massachusetts citizens with accurate information and, further, in holding a resident business accountable for its conduct. When that conduct occurs in a foreign country, however, and, as here, concerns medical services provided to travelers by residents of that country, our interests may have to bend to those of the foreign jurisdiction. The balance tips decisively in favor of a foreign jurisdiction when a primary issue to be litigated is the standard of medical care that may be (or has been) obtained there. For all of the reasons given above, we conclude that the appropriate forum in which to litigate all of the plaintiffs' claims against GWV is the Dominican Republic.[13]

Because dismissal on grounds of forum non conveniens requires the availability of another suitable forum, dismissal of the plaintiffs' negligent misrepresentation claim is conditioned on GWV's written agreement to waive any defenses based on the statute of limitations or lack of personal jurisdiction, and to waive any requirement that the plaintiffs post a bond, and on the further condition that the court in the Dominican Republic give full force and effect to such waivers.[14]

3. Having decided the forum non conveniens issue in the defendant's favor, we need not decide whether to adopt principles set forth in the Restatement (Second) of Torts § 311 (1965), describing the tort of negligent misrepresentation that results in physical injury. It suffices to say that, contrary to the plaintiffs' assertion, that tort is not, at this time, a recognized cause of ac-

[13]To prevail on a wrongful death claim, pursuant to G. L. c. 229, § 2, a plaintiff must prove negligence, or wilful or reckless conduct, on the part of the defendant, that caused the death of a person. The plaintiffs' wrongful death claim is predicated on their claim of negligent misrepresentation against GWV. Dismissal of that claim, therefore, is appropriate.

[14]GWV filed such a waiver in the Superior Court in connection with the dismissal of the plaintiffs' negligence claim against it.

tion in Massachusetts.[15] The cases cited by the plaintiffs in their brief involve representations made based on the expert knowledge of defendants who have relationships with the plaintiff. See *Ernen* v. *Crofwell*, 272 Mass. 172, 175 (1930) (dentist failed to inform plaintiff that broken needle remained in her jaw); *Andreottala* v. *Gaeta*, 260 Mass. 105, 109 (1927) (pharmacist gave plaintiff wrong drug with assurance it was adequate); *Cowen* v. *Sunderland*, 145 Mass. 363, 366 (1887) (lessor failed to inform lessee of dangerous condition on property). The decisions do not support the plaintiffs' position.

4. The order granting summary judgment in favor of GWV and the order denying GWV's motion to dismiss the plaintiffs' claims of negligent representation and wrongful death are vacated. The case is remanded to the Superior Court for entry of an order dismissing the plaintiffs' claims on the ground of forum non conveniens. The order of dismissal shall be conditioned on GWV's waiver of defenses otherwise available as to jurisdiction and the statute of limitations, and its waiver of any requirement that the plaintiffs post a bond, should the plaintiffs choose to bring their claims in a court in the Dominican Republic, and by the acceptance of such waiver by the Dominican court.

*So ordered.*

---

[15]We note that the plaintiffs, who seek to recover as administrators of Jennifer's estate, make no claim that Jennifer was at any time aware of, or reasonably relied on, the statements made by Harris to her parents. No one has brought this point to our attention, and we have no opinion as to its relevance.