Hopkins, Merita A., J.
Plaintiff American Paper Recycling, Inc. (“American”) filed this action alleging that Renew Bahamas, Ltd. (“Renew”)’ breached a contract to provide American with certain quantities of cardboard, mixed paper, plastic bottles, and used beverage cans. This matter is before the court on Renew’s Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. For the reasons discussed below, that motion is DENIED.
BACKGROUND
American is a Massachusetts corporation with a principal place of business in Mansfield, Massachusetts. Renew is a corporation in the Bahamas with a principal place of business in Nassau, New Providence, Bahamas. On June 4, 2014, American and Renew signed a written letter of intent whereby Renew agreed to provide American with all of its baled fibre and polymer products prior to the installation and commissioning of permanent baler machines. Thereafter, Renew would provide American with the greater of 45,000 tons or 50% of the total annual tonnage of cardboard, mixed paper, mixed plastic bottles, and used beverage cans produced at the site, which American would then market and sell to other sources. The parties formalized and finalized their agreement on December 27, 2014 with a written Marketing and Services Agreement (“the Agreement”). The Agreement provides that Renew will sell American 50% of the total output of cardboard, mix paper, and plastic polymer grades and 100% of the aluminum can grades. For any tons not shipped through American, Renew will pay a *572 buyback commission of $6.00 per ton for any shortfall weight.
In a complaint filed on November 12, 2015, American alleges that Renew failed to ship the required tonnage from its plant in the Bahamas and failed to pay any buyback commission. Renew knew that American had committed to resell the materials and that certain mills were waiting for shipments of recyclate from Renew through American, including America Chung Nam Holdings, Inc. in City of Industry, California; International Forest Products, LLC in Foxboro, Massachusetts; and Coastal Recycling, Inc. in Miami, Florida. Instead of shipping recyclate to American or on its behalf, Renew shipped the materials directly to these mills. On October 20, 2015, counsel for American sent Renew a demand letter pursuant to General Laws Chapter 93A. Renew, which owes American at least $90,000, failed to respond with a reasonable settlement offer. Count I of American’s complaint alleges breach of contract and Count II alleges violation of Chapter 93A. Count III asserts the statutoiy remedy of reach and apply pursuant to G.L.c. 214, §3 against America Chung Nam Holdings, Inc., while Count IV asserts the common-law remedy of reach and apply. Count V asserts the G.L.c. 214, §3 reach and apply remedy against International Forest Products, LLC, while Count VI asserts the common-law remedy of reach and apply. Count VII asserts the G.L.c. 214, §3 reach and apply remedy against Coastal Recycling, Inc., while Count VIII asserts the common-law remedy of reach and apply.
In support of its motion to dismiss, Renew has filed the affidavit of Michael Cox (“Cox”), its Chief Operating Officer. Cox avers that Renew is incorporated in the Bahamas and has its principal place of business there. Renew focuses on sustainable waste management for the Islands of the Bahamas. Its goal is to minimize the amount of waste in landfills by converting waste into valuable resources. Renew does not have and has never had an office or any employees in Massachusetts. Renew does not own, rent, or use property in Massachusetts. Renew does not advertise in Massachusetts, nor has it ever shipped any goods or materials to Massachusetts for any reason. Renew’s representatives have never traveled to Massachusetts.
Cox avers that in early June of 2014, American drafted a Letter of Intent (“LOI”) and emailed it to Renew in the Bahamas for review. American and Renew exchanged changes to the LOI before finalizing it. Renew then signed the LOI in the Bahamas. Pursuant to the LOI, American agreed to make available, ship, install and commission horizontal and vertical balers at Renew’s principal place of business in the Bahamas. Renew was authorized to operate these balers in the Bahamas to produce a certain amount of recycled product. Renew was obligated to provide all general plant, equipment and personnel needed to load, operate and unload the balers in the Bahamas. Renew also agreed to sell various recyclate products to American or to third parties on American’s behalf. However, the LOI did not obligate Renew to supply any goods in Massachusetts. American sent a staff member to the Bahamas to train Renew to use the balers, oversee and manage the baler operations, confirm quality assurance, and provide advice on other issues.
Cox avers that in December of 2014, American representatives traveled to the Bahamas to discuss its business relationship with Renew and to see Renew’s headquarters. During this visit, American and Renew negotiated business terms for moving forward and executed the Agreement. The Agreement states that it is to be governed by the laws of Massachusetts. Pursuant to the Agreement, Renew was required to sell American a certain percentage of its cardboard, mix paper, plastic polymer grades, and aluminum can grade. Renew sold two shipments of recyclate to American at the Nassau, Bahamas port. Cox believes that the vessel carrying the recyclate departed Nassau and traveled to its destination in India. Renew sent American two invoices for these shipments via email and American sent payment to Renew in the Bahamas. Renew never issued any payment to American in Massachusetts. Renew has never shipped any recyclate to American or to any other company in Massachusetts.
American has filed the affidavit of its President, Ken Golden (“Golden”), who avers that in May of 2014, Cox called him seeking baler machines for use in his recycling company in the Bahamas. Cox told Golden that he had conducted a Google search for a company who might provide the equipment and found American located in Mansfield; Massachusetts. Golden avers that the Agreement, which is printed on American letterhead, originated in Massachusetts. In an email dated May 19, 2014, Cox stated that he wanted the balers sent from American’s Mansfield office to the Bahamas. In emails dated May 27, 2014, June 4, 2014 and November 24, 2014, Cox asked Katie Partridge (“Partridge”), American’s Director of Export in Mansfield, to send an employee from Mansfield to the Bahamas to install the balers and train Renew’s employees. American shipped the balers, which were stored in Mansfield, to the Bahamas from Boston. Cox sent a crew from Mansfield to the Bahamas to install the balers and train Renew’s employees.
Golden avers that Renew agreed to export recyclate to Mansfield and discussed this with Partridge via email. Golden further avers that Renew made two or three shipments of corrugated material from Nassau to Boston. American sent a number of invoices to Renew from Mansfield for payment. Finally, Golden avers that Renew has transacted business with and sent materials to International Forest Products, LLC, a Foxboro, Massachusetts company.
DISCUSSION
For the court to exercise personal jurisdiction over a nonresident defendant, the longarm statute must *573 authorize jurisdiction and the exercise of jurisdiction must be consistent with basic due process requirements. Bulldog Investors Gen. P’ship v. Secretary of the Commonwealth, 457 Mass. 210, 215 (2010); Fletcher Fixed Income Alpha Fund Ltd. v. Grant Thornton LLP, 89 Mass.App.Ct. 718, 720 (2016). Once jurisdiction is challenged, the plaintiff bears the burden of production as to jurisdictional facts. Bulldog Investors Gen. P’ship v. Secretary of the Commonwealth, 457 Mass. at 219; Roberts v. Legendary Marine Sales, 447 Mass. 860, 863 (2006). Where the court does not hold an evidentiary hearing but decides the motion to dismiss solely on the basis of affidavits and other documentary evidence, it applies a prima facie standard requiring the plaintiff to proffer enough evidence which, if credited, supports a finding of personal jurisdiction. Cannonball Fund Ltd. v. Dutchess Capital Mgmt., LLC, 84 Mass.App.Ct. 75, 97, rev. den., 466 Mass. 1106 (2013); Cepeda v. Kass, 62 Mass.App.Ct. 732, 737 (2004).[2] The court views the relevant facts in the light most favorable to the plaintiff. Tatro v. Manor Care, Inc., 416 Mass. 763, 765 (1994); Cepeda v. Kass, 62 Mass.App.Ct. at 738.
The parties dispute whether this Court has specific jurisdiction over Renew.[3] The Massachusetts longarm statute provides, in relevant part;
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injuiy by an act or omission in this commonwealth; [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.
G.L.c. 223A, §3.[4] Because this statute functions as an assertion of jurisdiction over the person to the limits allowed by the United States Constitution, the requirements of each subsection of section three are to be construed broadly. Tatro v. Manor Care, Inc., 416 Mass. at 771. Generally, whether the exercise of personal jurisdiction is permissible in a particular case is fact-specific. Good Hope, Inc. v. Ryder Scott Co., 378 Mass. 1, 2 (1979).
To satisfy §3(a) of the statute, the defendant must have transacted business in Massachusetts and the plaintiffs claim must have arisen from the transaction of business by the defendant. Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. 122, 126 (2005). The statute applies to any purposeful act in Massachusetts, whether commercial or personal; the test is designed to identify deliberate, as opposed to fortuitous, contacts with the forum by the non-resident. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. at 8; Ross v. Ross, 371 Mass. 439, 441 (1976). See also, Carlson v. University of Vt, 380 Mass. 102, 105 (1980) (statute requires affirmative, intentional act of defendant that makes it fair and reasonable to require him to come into state to defend action). Transacting business typically requires a regular course of dealing or continuing relationship between the parties that represents a purposeful intent by the defendant to avail itself of the privilege of conducting business in Massachusetts. It must have more than a slight effect on commerce in the state. Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. at 126.
That the defendant entered into a contract with a plaintiff that has a place of business in Massachusetts “is itself hardly enough to satisfy §3(a).” Telco Communications, Inc. v. New Jersey State Fireman’s Mut. Benevolent Ass’n, 41 Mass.App.Ct. 225, 231 (1996). The court must evaluate the relations between the parties, their respective activities under the contract, and the links, if any, between the defendant’s participation in the transaction and Massachusetts. Id. at 228, 230-31 (statute not met where parties had no other business dealings, contract negotiation meeting did not take place in Mass., drafts were exchanged through fax, bulk of performance was to take place outside of Mass., and parties exchanged a few telephone calls before contract failed). The focus in a contract case is on the contacts relating to the formation of the contract and the location of the defendant’s performance thereunder. Pale Hose Designs, Inc. v. Stanfab Apparels, 2007 WL 2935877 at *5 (Mass.Super.Ct. Aug. 21, 2007) (Fabricant, J.) [23 Mass. L. Rptr. 163]; M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d 269, 275 (D.Mass. 2008). Extensive post-contract communications that relate to performance of the contract itself also are relevant. M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 276. Finally, the court may consider general contacts with Massachusetts not connected to the particular contract if they are directed at soliciting the same kind of contractual relationship. See Tatro v. Manor Care, Inc., 416 Mass. at 769; Fletcher Fixed Income Alpha Fund Ltd. v. Grant Thornton LLP, 89 Mass.App.Ct. at 722. Determining jurisdiction is not a matter of counting communications between states, whether by electronic or other means, but of evaluating the overall substance and effect of the transaction. Pale Hose Designs, Inc. v. Stanfab Apparels, 2007 WL 2935877 at *8.
Here, it is significant that Renew solicited a long-term business relationship with a Massachusetts corporation by calling American in Mansfield, requesting the provision of equipment and offering to provide a product. See Tatro v. Manor Care, Inc., 416 Mass. at 767; Lyle Richards Int’l Ltd. v. Ashworth, Inc., 132 F.3d 111, 113 (1st Cir. 1997). Further, the parties conducted negotiations not only in person in the Baha *574 mas, but also through emails into Massachusetts. In the case of a typical passive purchaser, letters and phone calls into a forum that may accompany an order are viewed as ancillary activity without substantial commercial consequence in the forum. M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 275. Where, however, the agreement is not boilerplate or pro forma but rather, the result of active negotiations by the non-resident party, then telephone calls, emails and faxes into Massachusetts may be viewed as deliberate contacts sufficient upon which to predicate jurisdiction. EIQnetworks, Inc. v. BHI Advanced Internet Solutions, Inc., 726 F.Sup.2d 26, 33 (D.Mass. 2010). See also Cf. Hahn v. Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983) (sending law school application and acceptance letter to Mass, was transacting business); Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Sup.2d 102, 109 (D.Mass. 2003) (several phone calls, emails and faxes into Massachusetts to negotiate contract constituted transacting business). After Renew’s initial phone call to American, Cox emailed Partridge stating that he wanted to move forward with the relationship and wanted to organize a call to discuss the details of the contract terms and conditions. Cox then sent American at least two other emails before the parties executed the Agreement. Thus, it appears that Renew actively participated in negotiating the terms of the contract through communications into Massachusetts. In addition, the Agreement states that it will be governed by Massachusetts law. Although not dispositive, such a provision is properly viewed as probative of whether Renew deliberately chose to avail itself of the rights and protections afforded by the forum. See Champion Exposition Serv., Inc. v. Hi-Tech Elec., LLC, 273 F.Sup.2d 172, 176 (D.Mass. 2003).
Further, in contrast to an isolated purchase and sale of equipment, the Agreement contemplates an ongoing relationship for five years (with a potential extension to twenty years) in which, following the installation of the equipment in the Bahamas, Renew would supply American with fixed percentages of recyclate. See Connecticut Nat’l Bank v. Hoover Treated Wood Prod., Inc., 37 Mass.App.Ct. 231, 234-35 (1994) (defendant transacted business under §3(a) where it made over 30 shipments of product to Massachusetts, a substantial volume of business that was purposeful solicitation of business rather than isolated transaction). Cf. Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. at 126 (statute not met by isolated transaction in which plaintiff called defendant from Mass, to order equipment and sent check from Mass, to pay for it, and defendant sent invoice and several letters about sale to Mass., then shipped equipment to Mass.). It appears that the parties anticipated that there would be ongoing communications between Massachusetts and the Bahamas over the life of the contract, although Renew allegedly breached the contract in short order and most of the post-execution communications concern the breach. See Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. at 6 (defendant transacted business under §3(a) where in course of a year providing engineering services, defendant sent nine appraisal reports and seventeen invoices to Mass., initiated fifiy-two telephone calls to refineries in Mass, and regularly accepted checks drawn on Mass, bank account); M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 277 (statute met where parties had series of communications about agreement, plaintiff sent contract from Mass., and contract contemplated multiple daily communications to coordinate performance outside of Mass.); Energy Capital & Serv. LP, II v. Hill Refrigeration, Inc., 989 F.Sup. 353, 355 (D.Mass. 1997) (under long-term contract for installation and service of equipment in New Jersey, communications into Massachusetts over four-year period regarding performance and administration of agreement, maintenance of equipment, and payments satisfied §3 (a) although contract was negotiated and executed in New Jersey).
Finally, although the Agreement does not specify the locations to which Renew must ship the recyclate, Golden avers that Renew agreed to export recyclate to Mansfield and made two or three shipments of corrugated material from Nassau to Boston.[5] See Diamond Group, Inc. v. Selective Distrib. Int’l, Inc., 84 Mass.App.Ct. 545, 549 (2013), rev. den., 467 Mass. 1107 (2014) (to constitute transacting business, volume of business need not be substantial but merely beyond incidental). In addition, Renew has transacted business with and sent recyclate materials to International Forest Products, LLC, a Massachusetts company, allegedly in breach of the Agreement. Cf. Tatro v. Manor Care, Inc., 416 Mass. at 769. This Court concludes that American has made a prima facie case that Renew transacted business in Massachusetts within the meaning of G.L.c. 223A, §3(a).
If the literal requirements of the longarm statute are satisfied, American also must show that the exercise of personal jurisdiction over Renew comports with due process. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. at 5-6; M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 277. The constitutional touchstone is whether the defendant established minimum contacts in Massachusetts, an analysis that involves three requirements. Bulldog Investors Gen. P’ship v. Secretary of the Commonwealth, 457 Mass. at 217; Diamond Group, Inc. v. Selective Distrib. Int’l, Inc., 84 Mass.App.Ct. at 552. First, the contacts must arise from some act by which the defendant purposefully avails itself of the privilege of conducting business in the forum, thus invoking the benefits and protections of its laws. Id. Second, the claim must arise out of or relate to the defendant’s contacts with the forum. Id. Third, the assertion of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. Id.
*575 The purposeful availment requirement ensures that personal jurisdiction is not premised solely upon a defendant’s random, isolated, or fortuitous contacts with a forum state. M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 277. The two focal points are the voluntariness of the defendant’s contacts with the forum and the foreseeability of the defendant being haled into court there. Id. at 278. Renew initiated and negotiated an ongoing business relationship with a Massachusetts company and sought to derive commercial benefit from it, which constitutes purposeful availment. See Bulldog Investors Gen. P’ship v. Secretary of the Commonwealth, 457 Mass. at 217-18 (soliciting business from Mass, resident was purposeful availment). Where a defendant deliberately creates continuing obligations between himself and a resident of the forum, he has availed himself of the privilege of conducting business there. Diamond Group, Inc. v. Selective Distrib. Int’l, Inc., 84 Mass.App.Ct. at 553. In addition, the fact that the Agreement contains a choice of law provision favoring Massachusetts makes it foreseeable that American would sue for any breach of contract in a Massachusetts court. See M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 278.
The relatedness inquiry is a flexible, relaxed standard that is functionally the same as the G.L.c. 223A, §3(a) requirement. M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 277. In a contract case, the inquiry focuses on whether the defendant’s forum-based activities are instrumental in forming the contract or in its breach. Jet Wine & Spirits, Inc. v. Bacardi & Co. Ltd., 298 F.3d 1, 7 (1st Cir. 2002); Mass. Sch. of Law at Andover v. American Bar Ass’n, 142 F.3d 26, 35 (1st Cir. 1998). The court may also examine contacts with respect to the contract terms, contemplated future consequences, and the parties’ actual course of dealing. C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 66 (1st Cir. 2014). Here, Renew solicited and negotiated an ongoing business relationship with American through calls and emails into the forum. Further, part of its alleged breach involves contact with Massachusetts: shipping recyclate directly to a different Massachusetts company, International Forest Products, LLC, instead of to or on behalf of American.
Finally, the exercise of jurisdiction over Renew would not offend principles of fair play and substantial justice. The court weighs the burden on the out-of State party of litigating in Massachusetts, the Commonwealth’s interest in adjudicating the dispute, and the Commonwealth’s interest in obtaining convenient and effective relief. Bulldog Investors Gen. P’ship v. the Commonwealth, 457 Mass. at 218; M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 279. It is always inconvenient and costly for a party to litigate in a foreign jurisdiction; accordingly, the defendant must show that the exercise of jurisdiction by the forum is onerous in a special, unusual, or other constitutionally significant way. C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 69-70 (1st Cir. 2014); Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994), cert. den., 514 U.S. 1108 (1995); M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Sup.2d at 279. Renew has not demonstrated that litigation-related travel between Massachusetts and the Bahamas poses a special or unusual burden in the modern age or that the international dimensions of this case present some other unique onus. See C. W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d at 69-70; Pritzker v. Yari, 42 F.3d at 64. Cf. Jet Wine & Spirits, Inc. v. Bacardi & Co. Ltd., 298 F.3d at 11 (not unduly burdensome to make company with primaiy place of business in Bahamas defend suit in New Hampshire where it was international corporation that did business in United States); Nowak v. Tak How Investments Ltd., 94 F.3d 708, 718 (1st Cir. 1996), cert. den., 520 U.S. 1155 (1997) (not unduly burdensome to make company with sole place of business in Hong Kong defend suit in Massachusetts). Moreover, there is no evidence that American has chosen to adjudicate this matter in Massachusetts merely to harass or vex Renew. See Gemini Investors, Inc. v. Ameripark, Inc., 542 F.Sup.2d 119, 125 (D.Mass. 2008). Accordingly, any burden on Renew in litigating this dispute in Massachusetts falls short of attaining constitutional significance.
As a Massachusetts resident, American is entitled to accessible legal process in Massachusetts for the assertion of its contract claim. See Diamond Group, Inc. v. Selective Distribution Int’l, Inc., 84 Mass.App.Ct. at 554; Jet Wine & Spirits, Inc. v. Bacardi & Co. Ltd., 298 F.3d at 11. Moreover, the Commonwealth has a manifest interest in providing a convenient forum to residents asserting good faith and objectively reasonable claims for relief. Id. Weighing the relevant factors, the exercise of personal jurisdiction over Renew does not appear to be fundamentally unfair. American has established a prima facie case satisfying both the longarm statute and the requirements of due process. Accordingly, Renew’s motion to dismiss for lack of personal jurisdiction is denied at this stage of the proceeding.
Alternatively, Renew moves to dismiss the complaint under the doctrine of forum non conveniens as set forth at G.L.c. 223A, §5:
When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.
Where jurisdiction and venue are proper, dismissal on the ground of forum non conveniens rarely will be granted. Gianocostas v. Interface Group Mass, Inc., 450 Mass. 715, 723 (2008). Whether to dismiss an action lies in the sound discretion of the judge and depends greatly on the specific facts of the case. Id.; W.R. Grace & Co. v. Hartford Accident & Indem. Co., *576 407 Mass. 572, 577 (1990). The defendant bears the burden of showing that the law of the alternate forum permits recovery for the plaintiff under the circumstances presented. Gianocostas v. Interface Group Mass., Inc., 450 Mass. at 725. If the court determines that an adequate alternative forum exists, it then must weigh the relevant private and public considerations. Id.
Relevant private factors are the ease of access to proof, the availability of compulsory process, the cost of the attendance of witnesses, and the enforceability of a judgment. W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. at 578; New Amsterdam Cas. Co. v. Estes, 353 Mass. 90, 95 (1967). Relevant public interest factors are the administrative burdens caused by litigation that has its origins elsewhere, the local interest in having localized controversies decided at home, and the desirability of trying a case in a forum that is familiar with the governing law. W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. at 578; New Amsterdam Cas. Co. v. Estes, 353 Mass. at 96. Unless the balance weighs strongly in favor of the defendant, the plaintiffs choice of forum should not be disturbed. W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. at 578, 583-84 (substantial and compelling reasons to try case elsewhere may overcome plaintiffs choice of forum). See also Joly v. Albert Larocque Lumber Ltd., 397 Mass. 43, 44 (1986) (doctrine of forum non conveniens must be applied with caution).
Renew has not met its burden to prove that the law of the Bahamas permits recovery for American under the circumstances presented. See Gianocostas v. Interface Group Mass, Inc., 450 Mass. at 725. Renew asserts in its brief that the Bahamas recognizes a cause of action for breach of contract and has a consumer protection statute, citing to Chapter 337 of Statute Law of the Bahamas. However, it has not provided this Court with a copy of the relevant laws, nor has it proffered affidavits by legal experts on Bahamian law. Cf. Smith v. Chason, 1997 WL 298254 at *8 (D.Mass.) (Saris, J.) (defendant provided affidavit from attorney licensed to practice in Bahamas explaining negligence law in that forum); Gianocostas v. Interface Group Mass., Inc., 450 Mass. at 725 (parties submitted affidavits from numerous legal experts on Dominican law); Minnis v. Peebles, 24 Mass.App.Ct. 467, 470 (1987) (defendant submitted chapter of encyclopedia discussing Bermuda’s law of negligence). Thus, Renew has not established that the courts of the Bahamas would provide an adequate alternative forum for this lawsuit.
Further, with respect to the private factors, it appears that the documentary evidence of Renew’s breach of contract by failing to send American recyclate and sending it directly to third-party mills is spread between Massachusetts and the Bahamas. Cf. Gianocostas v. Interface Group Mass., Inc., 450 Mass. at 726-27 (private interests favored dismissal where critical records and witnesses in medical malpractice and negligent misrepresentation suit were in Dominican Republic). In terms of witnesses, Cox and, presumably, other Renew employees are in the Bahamas. Notably, however, Renew has not identified any other witness with relevant testimony, and the relevant emails involve Cox. The American employees with relevant testimony, Golden and Partridge, are in Massachusetts. The third-party mills that may have relevant testimony are located in Massachusetts, California, and Florida. On this record, Renew has not shown that the Bahamas is the forum in which the greatest number of nonparty witnesses and documents can conveniently be found and made subject to process. See W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. at 584-85. It appears that in either forum, there will be some witnesses who are not amenable to compulsory process. See Minnis v. Peebles, 24 Mass.App.Ct. at 471 (declining to dismiss action involving motor vehicle accident in Bermuda where only two witnesses were amenable to process there and five witnesses were not amenable to process in either forum); Pulte Computer Corp. v. Debus, 1990 Mass.App.Div. 211, 214 (declining to dismiss action against German national who argued lack of compulsory process but failed to identify prospective witnesses and their anticipated testimony). Similarly, in either forum, it will be costly and inconvenient to secure the attendance of some witnesses.
With respect to the relevant public interest factors, Renew has not identified any particular administrative burden on the court from the litigation of this case in Massachusetts. Admittedly, the Bahamas has some local interest in resolution of this dispute. However, the Superior Court is more familiar with the governing Massachusetts law than would be a court in the Bahamas. See W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. at 578; New Amsterdam Cas. Co. v. Estes, 353 Mass. at 96. Renew has failed to demonstrate that the balance of relevant factors weighs so strongly in its favor that this Court should disturb American’s choice of forum. The ends of justice do not strongly indicate that this case is more suitably tried in the Bahamas. Cf. Gianocostas uv. Interface Group Mass., Inc., 450 Mass. at 725-27 (dismissing negligence claims where their core was medical malpractice and misrepresentations occurring in Dominican Republic). Accordingly, this Court, in its discretion, declines to dismiss on the ground of forum non conveniens.
ORDER
For the foregoing reasons, it is hereby ORDERED that Renew’s Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens be DENIED.

 Under this approach, a final determination of personal jurisdiction is reserved for trial, at which time the plaintiff must prove it by a preponderance of the credible evidence. Cepeda v. Kass, 62 Mass.App.Ct. at 738-39.

 In contrast, general jurisdiction requires that a foreign corporation have such continuous and systematic affiliation with the forum as to render it essentially at home there. See Fletcher Fixed Income Alpha Fund Ltd. v. Grant Thornton, LLP, 89 Mass.App.Ct. at 721. From the allegations of the complaint and affidavits of the parties, it does not appear that Renew has the requisite continuous and systematic contact with Massachusetts to warrant the exercise of general jurisdiction.

 The term “person” is defined in G.L.c. 223A, § 1 to include a corporation. Intech, Inc. v. Triple “C" Marine Salvage, Inc., 444 Mass. 122, 125 (2005).

 Although Cox avers that Renew has never shipped any goods or materials to Massachusetts and Renew asserts in its brief that Golden is lying, for purposes of this motion, this Court must view the facts in the light most favorable to American. Tatro v. Manor Care, Inc., 416 Mass. at 765; Cepeda v. Kass, 62 Mass.App.Ct. at 738.